GILBERT CALKINS *et al.*

*v.*

CHARLES CALKINS *et al.*

*Opinion filed June 23, 1905—Rehearing denied October 11, 1905.*

1. WILLS—*what constitutes a valid will is a legislative question.* What will constitute a valid will or a valid attestation of a will is a legislative question, the only legitimate function of the courts being to declare and enforce the law as enacted by the legislature.

2. SAME—*attesting witness must be a subscribing witness.* Attestation of a will is the act of witnessing the actual execution of the instrument and subscribing the name of the witness in testimony of that fact, and it is not competent to prove a will by a person who was present and witnessed its execution but who did not sign as an attesting witness.

3. SAME—*will must be attested in presence of testator.* Under the statute a will must be signed by the subscribing witness in the presence of the testator, and it is not sufficient that the witnesses merely acknowledge their signatures in the testator's presence.

4. SAME—*"presence" means within the actual personal knowledge of testator.* The "presence" of the testator means contiguity, with an uninterrupted view between the testator and the subscribing witnesses, so that the testator can, if so disposed, see the act of attestation, whether in the same room or an adjoining room.

5. SAME—*fact that testator is blind does not change rule requiring personal knowledge of attestation.* Even though the testator is blind, the act of attesting his will must be brought within his actual personal knowledge through the medium of other senses in order to have been in his "presence," as that word is used in the statute.

6. SAME—*what is not a sufficient attestation of will.* A will is not sufficiently attested, under the statute, if the subscribing witnesses signed their names where it was impossible for the testator to have personal knowledge of their act, even though he had requested them to sign, saw them take the will into an adjoining room and saw the signatures on the will when it was brought back.

APPEAL from the Circuit Court of Kane county; the Hon. L. C. RUTH, Judge, presiding.

ALDRICH & WORCESTER, and LEE MIGHELL, for appellants:

The subscribing witnesses to a will should subscribe the same in a position where, by possibility, the testator may see them in the act of subscribing, if so disposed. Rev. Stat. chap. 148, sec. 2; Schouler on Wills, secs. 341, 342; *Drury* v. *Connell,* 177 Ill. 43; *In re Tobin,* 196 id. 484; *Green* v. *Green,* 145 id. 264; *Sloan* v. *Sloan,* 184 id. 579; *Gibson* v. *Nelson,* 181 id. 122; *Witt* v. *Gardiner,* 158 id. 181.

The word "attest," in our statute, has been construed in the case of *Sloan* v. *Sloan, supra,* to mean subscription by the witnesses. The word "presence" has been construed in the cases of *Witt* v. *Gardiner* and *Drury* v. *Connell, supra,* to mean in such relation to the testator that he may see the witnesses or touch them, if so disposed, depending upon his physical condition.

RAYMOND & NEWHALL, (ROBERT EGAN, of counsel,) for appellees:

A will is duly attested in the presence of a testator, within the meaning of the statute, where the witnesses subscribe their names in another room but within the hearing, knowledge and understanding of the testator, after which they immediately return to the bedside of the testator and the will is handed to the testator for inspection, then read to the testator in the presence of the subscribing witnesses, and after the reading thereof, including the attestation clause and signatures, the testator states that the will is in accordance with his wishes and desires. Rev. Stat. chap. 148, sec. 2; *Drury* v. *Connell,* 177 Ill. 43; *In re Tobin,* 196 id. 484; *Gibson* v. *Nelson,* 181 id. 122; *Cook* v. *Winchester,* 81 Mich. 581; *Cunningham* v. *Cunningham,* 51 L. R. A. 642; *Vaughan* v. *Vaughan,* 4 Am. Law Rep. (N. S.) 735; *Maynard* v. *Vin-*

*ton,* 59 Mich. 148; *Sturdevant* v. *Birchett,* 10 Gratt. 67; *Riggs* v. *Riggs,* 135 Mass. 238.

If the testator can see enough of the signing to know that the witnesses and the will are in his presence, and that the former are, at the time, signing their names as witnesses to his will, in accordance with his request, that will be sufficient. It is necessary only that the attestation be done in his presence and that he be able to comprehend the act of attestation. Rev. Stat. chap. 148, sec. 2; *In re Tobin,* 196 Ill. 484; *Cook* v. *Winchester,* 81 Mich. 581; *Cunningham* v. *Cunningham,* 51 L. R. A. 642.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellants filed their bill in the circuit court of Kane county to contest the will of Cyrus Calkins, deceased, alleging, among other things, that the will was not executed in conformity with the requirements of the statute, for the reason that the persons signing the will as witnesses did not attest it in the presence of said Cyrus Calkins, but signed it in another room from the one in which he was lying and out of the range of his vision, where he did not and could not see the act of attestation. F. M. McNair, the executor, and Charles Calkins and Clara Calkins, three of the appellees, by their answer alleged that the will was signed within the range of vision of the testator, and that after it was signed by the witnesses it was immediately presented to the testator and by him read over and acknowledged in the presence of said witnesses who had so signed the same. An issue was formed and submitted to a jury for trial, when the alleged will was presented signed by Cyrus Calkins with his mark and with the usual attestation clause signed by Phoebe Catlin and Edwin M. Harris. The subscribing witnesses testified that the will was prepared by the witness Harris and was signed by the testator at nine or ten o'clock in the evening; that the

testator was lying in bed with a broken hip; that after affixing his mark to it, he, in response to a question by Dr. McNair, the executor, requested said witnesses to witness it; that they took the will and went into an adjoining room out of the presence of the testator and outside of the range of his vision, where it was a physical impossibility for him to see them or the will, and sat down by a table and wrote their signatures; that Mr. Harris then took the will and a lamp and they went back into the room where the testator was; that Mr. Harris then read the will to the testator, including the signatures, and showed them to him, and he said it was all right. The will being offered in evidence was objected to by the appellants on the ground that it was not executed in accordance with the statute, and was not attested in the presence of the testator or within his sight or view or within the possible range of his vision. The court overruled the objection and admitted the will in evidence. The same question was afterwards raised by instructions asked by the appellants and refused, and the court gave instructions at the instance of appellees stating, in effect, that there was a valid attestation of the will if the jury found the facts to be as testified to by said witnesses. The verdict was that the writing introduced in evidence was the last will and testament of Cyrus Calkins, deceased, and after overruling a motion for a new trial the court entered a decree in accordance with the verdict. From that decree this appeal was prosecuted.

It must be borne in mind that the question what will constitute a valid will devising property or a valid attestation of such an instrument is legislative, and that the only legitimate function of the court is to declare and enforce the law as enacted by the legislature. The office of the court is to interpret the language used by the legislature where it requires interpretation, but not to annex new provisions or substitute different ones. The statute requires that all wills, testaments and codicils shall be attested in the presence of the testator or testatrix by two or more credible witnesses, and if we

should attempt to change that provision so as to authorize an attestation out of the presence of the testator or testatrix, either on account of a desire to sustain a particular will or because we regard a subsequent acknowledgment by the witnesses or ratification or approval by the testator just as good and effective as an attestation according to the statute, we should justly be charged with offensive judicial legislation. Our duty is merely to determine whether this will was attested in the presence of the testator, and the evidence was that it was not so attested, but was afterwards read over to the testator and the signatures of the witnesses were shown to him. Attestation is the act of witnessing the actual execution of an instrument and subscribing the name of the witness in testimony of the fact. (4 Cyc. 888.) In the case of *Drury* v. *Connell,* 177 Ill. 43, it was said that the attestation of a will consists in the subscription of the names of the witnesses to the attestation clause as a declaration that the signature of the testator was affixed or the will acknowledged in their presence, and in the case of *Sloan* v. *Sloan,* 184 Ill. 579, the court considered the question whether there is a distinction between the attestation of a will and the subscription of the names of the witnesses. In that case the proponent offered to prove by one who was present that the will was signed by both the witnesses in his presence and that it was executed and published by the deceased as and for his last will in his presence, but it was said that a different rule had been too long acquiesced in and understood in this State, and that to render a will valid it must be subscribed by the attesting witnesses. The supposed distinction, as applied to our statute, was rejected, and it was held that an attesting witness must be a subscribing witness, and that it is not competent to prove a will by a person who was present and witnessed its execution but did not sign as an attesting witness.

That the attestation mentioned in the statute consists in the witnesses subscribing their names is shown by other provisions of our statute. In case of a deceased, insane or

absent witness, the court may admit proof of the handwriting of such witness and admit the instrument to probate as though it had been proved by such subscribing witness in his or her proper person. Proof of the handwriting of the subscribing witness in such a case raises the presumption that the witness duly attested the will in the presence of the testator and believed him to possess testamentary capacity. (*More* v. *More,* 211 Ill. 268.) It is not indispensable that the witnesses shall sign a formal clause of attestation. The attestation clause may consist of a simple word, such as "witness," "attest" or "test," or there may be no words of attestation at all, and yet the signature of the witness alone constitutes an attestation of every fact necessary to make the will valid.

The provisions of the statute as to the signing by the testator and the witnesses are different. He may either sign the will in the presence of the witnesses or acknowledge that the will is his act and deed, but as to the witnesses, the only provision is that they shall attest the will in his presence. All the authorities declare that the object of the law is to prevent fraud and imposition upon the testator or the substitution of a surreptitious will, and to effect that object it is necessary that the testator shall be able to see and know that the witnesses have affixed their names to the paper which he has signed and acknowledged as his will. The legislature have determined that such object shall be attained by requiring the attestation of the subscribing witnesses to be in the presence of the testator, and if that is not done, it is no answer to say that some other method would effect the same object. Numerous methods may be devised by which the testator can be made acquainted with the fact that the witnesses have signed the identical will which he executed and that there is no fraud or imposition upon him, but where the legislature have determined in what manner the object in view shall be accomplished no other method can be adopted, although in the opinion of the court it would be just as ef-

fective. To adopt any other rule would open a limitless field as to what would be equivalent to a compliance with the provision of the statute.

The authorities have always given to the word "presence" the meaning of conscious presence, so that the act of attestation may be within the actual personal knowledge of the testator, and in *Witt* v. *Gardiner,* 158 Ill. 176, it was stated that the test of presence of the testator is contiguity, with an uninterrupted view between the testator and the subscribing witnesses, as the indispensable element to the physical signing in the testator's presence. It is not necessary that the act of attestation be performed in the same room, if it takes place within the testator's range of vision where he can see the signing, considering his position and the state of his health at the time. It is still in his presence although he may turn and look away or choose not to look at the act. On the other hand, no mere contiguity of the witnesses will constitute presence if the position of the testator is such that he cannot possibly see them sign. An attestation is not in the presence of the testator, although the witnesses are in the same room and close to him, if some material obstacle prevents him from knowing of his own knowledge or perceiving by his senses the act of attestation. The rule so stated was re-affirmed in *Drury* v. *Connell, supra.*

But counsel say that according to the rule so stated a blind person would not be able to execute a will. The rule was naturally stated with reference to sight because nearly all persons can see, and the rule would apply almost universally. In the case of a blind person, his will would be attested in his presence if the act was brought within his personal knowledge through the medium of other senses. But whether a person is blind or can see, an attestation is certainly not in his presence if he has no conscious personal knowledge of the act and is merely told that it has been performed in another room. Neither is there anything in the suggestion that if a testator were lying on his bed and could

only look upward the witnesses would have to be suspended in the air over his head.   Means could be adopted to comply with the law, and the plain meaning of the authorities is that an attestation is in the presence of the testator only when he has personal knowledge that the witnesses are signing their names to his will in accordance with his request:

Counsel say that in this case the attestation was within the knowledge and understanding of the testator, meaning by that statement that from the question asked by the doctor concerning witnessing the will and the testator's answer and the taking of the will into the other room he would naturally conclude that they went there to attest the will and were attesting it.   It is perfectly clear that he could not have been a witness to the attestation, but that his knowledge, as it is called, was merely an inference or conclusion as to what was going on, based on other facts.

The question here involved was decided in *Mendell* v. *Dunbar,* 169 Mass. 74, where the testator signed the will in the presence of the subscribing witnesses and they withdrew to another room in the house and there subscribed it as witnesses.   There was a question whether the fact that the witnesses afterwards returned to the testator, and one of them, with the assent of the others, said that they had signed the will and showed him the signatures, and he assented thereto, was a sufficient compliance with the statute.   The question was answered in the negative.   The same view of the law was taken in the case of *In re Downie,* 42 Wis. 66.   We have been referred to two cases adopting a contrary view.   (*Cook* v. *Winchester,* (Mich.) 8 L. R. A. 22, and *Cunningham* v. *Cunningham,* (Minn.) 51 id. 642.)   In each of those cases there was a conscious effort on the part of the court to sustain the will on account of the equity and justice of the case.   The subsequent acknowledgment was considered as effective as the actual attestation in the presence of the testator and was held to be a substantial compliance with the statute.   But we do not regard the reasons given as suffi-

cient to justify a departure from the plain language of our statute. If some other method than the attestation in the presence of the testator would be just as effective to prevent fraud, imposition or the substitution of a surreptitious will, we deem it sufficient to say that the legislature has prescribed a particular method which must be followed in order to make a will legal and valid.

The court erred in overruling the objection to the will and in giving the instructions.

The decree is reversed and the cause remanded.

*Reversed and remanded.*