JOHN T. SCHOFIELD, Appellee, vs. AARON THOMAS et al.
Appellants.

*Opinion filed October 26, 1908—Rehearing denied Dec. 3, 1908.*

1. WILLS—*will must be attested within the range of testator's vision.* The attestation of a will, to be in the "presence" of the testator within the meaning of the statute, must take place within the uninterrupted range of the testator's vision, whether the latter is in the same room with attesting witnesses or in another room.

2. SAME—*effect where attestation clause does not show that testatrix was present.* Where the attestation clause does not recite that the testatrix was present there is no presumption that she was present, and in order to justify admitting the will to probate the evidence must show she was present when will was attested.

3. SAME—*when a will should not be probated.* A will should not be admitted to probate where both attesting witnesses testify that the testatrix was in another room and could not see them when they signed, even though the attorney who drew the will testifies to the contrary, if the testimony of the attesting witnesses, in view of all the facts and circumstances, is more worthy of belief than is the testimony of the attorney.

4. APPEALS AND ERRORS—*propositions of law have no place in matter of probate of will.* In the matter of probating a will the parties are not entitled to a trial by jury, and the provision of the Practice act concerning the presenting of propositions of law has no application.

5. SAME—*motion for new trial is unnecessary if there was no jury trial.* To preserve the question of the sufficiency of the evidence for review a motion for new trial is necessary only when there has been a trial by jury, and is not necessary, in the matter of probating a will, where an exception to the final judgment is properly preserved.

APPEAL from the Circuit Court of Cook county; the Hon. G. A. CARPENTER, Judge, presiding.

J. MARION MILLER, and JOHN M. HUMPHREY, (GEORGE M. STEVENS, of counsel,) for appellants.

FRANK H. GRAHAM, E. B. CRESAP, and JOHNSON & LOWENTHAL, (AMOS C. MILLER, of counsel,) for appellee.

236—27

Mr. JUSTICE CARTER delivered the opinion of the court:

The alleged will of Jane Ottman was refused probate by the probate court of Cook county, and on appeal the circuit court of that county found the instrument to be the last will of the said testatrix and ordered it admitted to probate. Appellants excepted to this order and judgment of the circuit court and have brought the case here by appeal for review.

The matter of the probate of this instrument has been in this court twice before. (*Schofield* v. *Thomas,* 226 Ill. 631; *Schofield* v. *Thomas,* 231 id. 114.) The questions as to testamentary capacity, undue influence and formalities of execution of said will did not, however, arise in those cases. Questions of practice and jurisdictional questions only were discussed therein.

Jane Ottman, at the time of the making of this instrument, was aged about sixty-five years. Her husband died several years before. She lived on Paulina street, near Fulton, in the city of Chicago, and had property, partly consisting of store and residence premises in that vicinity, amounting in value to some $20,000. About a year before her will was made she had fallen and broken her leg at the neck of the femur, making a very painful injury and requiring her to walk thereafter with a crutch or cane. Appellee, John T. Schofield, had resided with Mrs. Ottman and her husband at intervals during Mr. Ottman's life, and after his death Schofield had resided with Mrs. Ottman in the house on Paulina street and had acted in the capacity of care-taker for her buildings. It appears to have been understood in the neighborhood and by both witnesses to the instrument in question that Schofield was Mrs. Ottman's nephew, but, in fact, he was no relation. A few days before the execution of the will Schofield informed Charles Lange, the proprietor of a drug store in the vicinity, and Dr. McCollum, who treated Mrs. Ottman when she broke her leg, that she intended to have an attorney draw up her

will and he wanted them to be witnesses. April 2, 1902, Schofield came after Lange and the doctor, and together they went to the Paulina street residence. R. L. Rowden, who drew the will, was there when the witnesses reached the residence. The two witnesses testified that they went into the sitting-room, where there was a table, and that then Schofield went into the adjoining bed-room and came back with Mrs. Ottman, whom he assisted in walking. They do not agree fully as to just what took place while she was in the room. The doctor thinks she said "Good morning" and that the will was read over partially to her by Rowden. Lange does not think she said anything while she was in the room but merely nodded her head when she came in, and does not recall that any part of the will was read to her. They agree that she sat down at a table when she was brought into the room and signed the instrument and was then assisted by Schofield back to the room from which she came. Both of them testified that she did not ask them to sign as witnesses or state that it was her last will. Both also testified that she could not see them when they signed the instrument as witnesses, and that they signed at the request of Schofield and Rowden after Mrs. Ottman had been assisted out of the room. A diagram of the house introduced in evidence shows that the position of the table on which the instrument was signed was such that neither the will nor the witnesses as they signed could have been seen by a person in the room to which Mrs. Ottman went, unless such person's head was thrust through the open door into the room in which the will was signed. Appellee claims that the testatrix remained in the room while the witnesses were signing their names to the will. The only evidence in support of this contention is that of R. L. Rowden, who drew the instrument. He testified that when Schofield brought in the two witnesses the testatrix arose and introduced him to both of them, shook hands with them, and after some little conversation said to the two men that she wanted them to

be witnesses to her will and then asked Rowden to read it, and that thereupon he read it out loud in the presence of all, after which the doctor rose and offered his chair to the testatrix and she sat down and signed the will, then walked back to the sofa where she had been sitting before and remained there while the two witnesses signed. The will was dated April 2, 1902. The attestation clause reads as follows: "This instrument was on the day of the date thereof signed, published and declared by the said testator, Jane Ottman, to be her last will and testament, in the presence of us, who at her request have subscribed our names thereto as witnesses, in the presence of each other." The two witnesses testify positively that the testatrix was not in the room when they signed as witnesses and that she did not see them sign.

While authorities have been cited by appellee to show that the witnesses need not necessarily have been in the same room with testatrix at the time they signed, his contention is that she remained in the room all the time. This court has frequently held that the attestation of a will, to be in the presence of the testator within the meaning of the statute, must take place within the uninterrupted range of testator's vision; that the "presence" of the testator means contiguity, with such an uninterrupted view between the testator and the subscribing witnesses that he could, if so disposed, see the act of attestation, whether in the same room or in an adjoining room. (*Calkins* v. *Calkins,* 216 Ill. 458; *Drury* v. *Connell,* 177 id. 43; *Witt* v. *Gardiner,* 158 id. 176.) This question is so fully discussed in these decisions that it is unnecessary to amplify what was there said. If the evidence of the attesting witnesses is to be believed, then the instrument in question was not attested in the manner required by law.

Appellee contends that the testimony of Dr. McCollum taken in the probate court shows that he was not certain that Mrs. Ottman was not in the room at the time he signed as

a witness; that he there testified that "I think she was not in the room," while on the trial in the circuit court he testified positively that he knew she was not in the room. He explained this in his testimony before the latter court by saying that people often use the word "think" for "know," and that is the way he used it in his testimony before the probate court. Taking into consideration all his testimony before the probate court, we think the conclusion, even from . that alone, is that he wished that court to understand that Mrs. Ottman was not in the room at the time he signed as a witness.

The doctor also testified that the testatrix was addicted to the use of intoxicating liquors, and that he thought she was more or less under the influence of liquor at the time she signed the will. While he hesitated some as to giving this testimony, it is evident that in his opinion she was not in a condition to sign the will. It is contended that no reliance can be placed on his testimony, because if he believed that she was not in condition to sign he should not have acted as a witness. While on the witness stand in the circuit court he apparently realized the inconsistency of this, and explained that his signing under these circumstances grew out of the fact that he thought it was a mere matter of form; that he was told by Schofield that he (Schofield) was the only relative; that witness was also unfamiliar with the law relating to wills and the strictness required in their execution, this being his first experience. The other witness, Lange, testified that the testatrix, when signing the will, was sort of sickly or drowsy and looked feeble, but that he had no means of knowing whether she was drunk or sober.

Appellee further contends that the testimony of Rowden is consistent with all the other surrounding facts and circumstances as to the signing of the will. The attestation clause did not state that the witnesses signed their names in the presence of testatrix. It is not necessary, however,

that a formal attestation clause reciting all the facts necessary to a correct execution of the will be added to the instrument to make it a valid will. (*Mead* v. *Presbyterian Church,* 229 Ill. 526; *Calkins* v. *Calkins, supra; More* v. *More,* 211 Ill. 268.) It was held by this court in *Crowley* v. *Crowley,* 80 Ill. 469, where the two witnesses to the will could not identify the document as the one they had signed and could not state that the testator was of sound mind and memory at the time the writing was executed, that the evidence of the person who wrote the will that the testator was of sound mind and that he executed it in the presence of the two witnesses, uncorroborated, was not sufficient to admit the will to probate. This doctrine has been quoted with approval several times by this court. This court has also said that the law does not require the probating of a will to depend upon the recollection, or even the veracity, of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud. If the forgetfulness or falsehood of subscribing witnesses can invalidate a will, it would be easy, in many cases, to use such artifices or corruption as would render the best will nugatory. Their evidence is not conclusive either way, nor does the law presume that they are either more or less truthful than others. (*Gould* v. *Theological Seminary,* 189 Ill. 282; *Mead* v. *Presbyterian Church, supra.*) And in the *Gould case* we quoted with approval from *Orser* v. *Orser,* 24 N. Y. 51, that "a will duly attested upon its face, the signatures to which are all genuine, may be admitted to probate although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were complied with, and even although some of them should swear positively that they were not, if the other evidence warrants the inference that they were." We also quoted with approval in the *Gould case* from *In re Kellum's will,* 52 N. Y. 517, that "if the attestation clause is full and

the signatures genuine and the circumstances corroborative of due execution, and no evidence disproving a compliance in any particular, the presumption may be lawfully indulged · that all the provisions of the statute were complied with, although the witnesses are unable to recollect the execution or what took place at the time." No presumption, however, can be raised from this attestation clause as to the presence of the testator at the time the subscribing witnesses attested the will. To authorize the probating of the will, the evidence, other than this attestation clause, must convince the court that the testatrix was present when the subscribing witnesses signed their names. Admitting, for the sake of the argument, that it is clearly shown on this record that this will was signed by testatrix without undue influence and while she was of sound mind and memory, and that there was no fraud or imposition practiced upon her, yet the legislature has determined in what manner the will must be attested and no other method can be adopted, "although, in the opinion of the court, it would be just as effective. To adopt any other rule would open a limitless field as to what would be equivalent to a compliance with the provisions of the statute." (*Calkins* v. *Calkins, supra.*) In order to decide that the will was properly probated it is necessary for the court to hold on this record that the testimony of witness Rowden is more worthy of belief than the testimony of the two subscribing witnesses.

It should be noted at this point that appellants contend that Rowden was incompetent because of his interest in the result of the suit. They offered testimony tending to show that he made statements before the trial that if the will was upheld Schofield was to give him half of the estate. Appellee contends that this court has held that declarations of a witness before he is called, as to his interest, do not disqualify him, and that therefore the testimony as to these declarations of Rowden was incompetent; that such declarations are no more than hearsay testimony and therefore in-

admissible to prove a disqualifying interest. (*Waughop* v. *Weeks,* 22 Ill. 350.) Appellants urge that even though this be true, the testimony as to declarations made by Schofield to the same effect are admissible as to the interest of Rowden, (*Egbers* v. *Egbers,* 177 Ill. 82; *Blattner* v. *Weis,* 19 id. 246;) and that the evidence they produced of this character was sufficient to disqualify Rowden. On the record before us the admissibility of his testimony is not free from doubt; but even if it be held to be competent, we are of the opinion that it is not of such a character as to overcome the testimony of the two subscribing witnesses and justify this court in holding that they signed the will in Mrs. Ottman's presence.

Rowden testified that he was admitted to the bar in St. Louis, Missouri, in 1891, and came to Chicago in 1895, where he worked apparently for two years in a clerical position. Since that time he testifies he has been engaged in "a specialty in the line of practicing law." What that is we cannot gather clearly from the record, unless it be representing corporations in the collection of bills and claims or looking after outside interests for them on the road. From 1897 until 1903 he appears to have had headquarters in various law offices in Chicago,—at 95 Dearborn street, 52 Dearborn street, 155 Washington street, and the Schiller building, on Randolph street. He states that he was never admitted to the bar in Illinois, though a part of the time he was in Chicago he held himself out as a practicing attorney. An attorney's card was introduced in evidence by the appellants announcing him as an attorney at law in the Schiller building, in Chicago. Lange, one of the subscribing witnesses, testified that this card was given to him by Schofield before the will was written, with the statement that Rowden was his attorney. Rowden denies that he occupied an office in the Schiller building or had a card of this kind previous to September or October, 1902. He testifies that the first he knew about Mrs. Ottman was the

receiving of a letter from her just before April 1, 1902, requesting him to draw a will for her, and that in response to this letter he went to her residence, 42 Paulina street; that on rapping she came and opened the door and he introduced himself to her; that she invited him in and they talked at length about drawing the will; that Schofield was in the room with her; that he had never met him before. The inference from his testimony is that Schofield took no part in the conversation about the will. He testified that after talking over the details the testatrix gave him a description of the property and told him how she wanted the will drawn; that after paying her just debts and putting up a tombstone for herself and husband she wanted all her property to go to Schofield because he had looked after her interests so faithfully; that in accordance with the understanding of the previous day he came back April 2 with the will drawn, and after reading it over to Mrs. Ottman she said that was just the way she wanted it and requested Schofield to go and get the subscribing witnesses; that he never saw Schofield again until after Mrs. Ottman's death, in October, 1902, when the will was brought to him by Schofield for probate; that as attorney he presented the will for probate in the probate court, and has appeared since in the various proceedings in the various courts, not as an attorney but as a witness in behalf of the will. He left Chicago in the year 1903 and since then has had his headquarters in St. Louis, but has been out on the road most of the time. He was at San Antonio, Texas, just before he came to testify in the trial of this case. For the purpose of showing that Rowden was familiar with the drafting of wills, the appellee proved by Rowden that he was county judge of Logan county, Colorado, elected in 1887. Rowden also testified that he had been clerk of the United States court in Oklahoma under Harrison's administration. On cross-examination he admitted that he had not been clerk but was only acting as deputy, but had stated that he was clerk on

direct examination, because, as a matter of fact, he did all the work and had been accustomed to call himself clerk.

We have stated at some length the facts with reference to the testimony as to Rowden's business and professional career because we think it has a bearing on the reasonableness of his story. The mere reading of his testimony impresses one with the improbability of several of his statements as to how he came to draft the will and what took place in connection with its preparation and execution. The evidence shows conclusively that Schofield looked after all of the testatrix's affairs after her husband's death. Indeed, this fact is the basis of any reasonableness which might be claimed for the will giving substantially all of her property to him and failing to give anything to her sisters, nephews and nieces, who are appellants in this proceeding. Why, after Schofield, who was looking after all of her business affairs, had made preparations for the witnesses some days before the will was drawn, Mrs. Ottman should write a letter to an entire stranger,—a man who was not in the general practice of law and who was not admitted to practice law in Illinois,—to come and draft the will cannot be satisfactorily explained on this record. Rowden says the letter from her could not be found. There is testimony tending to show that Schofield and Rowden were together in a saloon in the vicinity the day the will was signed or shortly before that, and that they were drinking with testatrix in her house the day the will was executed. The claim of appellants that the testimony of Rowden as to what took place when he first met testatrix on April 1, as well as when the will was executed, is so filled with details that it is fairly open to the charge of being prepared for the occasion, finds some justification. To illustrate: He stated first that the testatrix, in telling him how she wanted the will drafted, stated that after her *just* debts were paid, etc. The trial court stopped him and asked him if she used the word "just," and Rowden said he was not sure whether she had or not. While not

impossible, it is certainly improbable that he should remember all the details just as they took place in the manner he has testified to them.

Appellee argues that the testimony of the subscribing witnesses is unworthy of belief because of the inconsistencies of the testimony in the trial court as compared with their testimony when the will was offered for probate. While there were some discrepancies and inconsistencies, we find nothing more than is liable to happen in the testimony of any witness given on the same subject matter after an interval of several years. Nothing in the record tends to show that either of the subscribing witnesses had any interest in this will or in the result of the contest. They appear to be men in good standing in their business and profession. It is urged by appellee as showing the interest of the subscribing witnesses, that they had an interview with an attorney for appellants previous to the probating of the will. It is manifest, however, that there was nothing uncommon or peculiar about this. The interview with Dr. McCollum was at his office and with Lange at his place of business. We find nothing in the record tending to show any reason why they should testify falsely in the case. In this connection it may be noted that the argument of appellee that Rowden, because of his experience in drafting and probating wills while he was acting as county judge in Colorado, would necessarily be familiar with the law on the subject as to the formalities to be observed in the execution of a will, proves too much. If he were so familiar with the formalities, why, it may be asked, did he not prepare the attestation clause so as to show that the subscribing witnesses attested the will in the presence of the testatrix, if they, in fact, did so? Not only this attestation clause, but all the facts in the record, except Rowden's testimony, are consistent with the testimony of the subscribing witnesses that the testatrix was not present at the time they subscribed their names. All the testimony in the record is so inconsistent with any other

theory that we are constrained to set aside the judgment and decree of the trial court in ordering the will to be probated.

Appellee argues that as no propositions of law were submitted to the court to be given or denied, no questions of law are presented on this record. We have held that in proceedings of this kind for the probating of a will the parties are not entitled to a jury trial; that the matter of the probate of a will is for the court. (*Moody* v. *Found,* 208 Ill. 78; *Schofield* v. *Thomas,* 231 id. 114.) The provision of the Practice act relating to propositions of law in cases tried by the court without a jury applies only to cases where parties are entitled to a jury trial and does not apply to a case of this kind. *People* v. *Chicago, Burlington and Quincy Railroad Co.* 231 Ill. 112, and authorities there cited.

The point is also made by appellee that appellants can not raise the sufficiency of the evidence on this hearing because no motion for new trial was made by them in the trial court. A motion for new trial is only necessary where a case has been tried by a jury. (*Guyer* v. *Davenport, Rock Island and Northwestern Railway Co.* 196 Ill. 370.) There was an exception in this case to the judgment and order properly preserved by bill of exceptions. *People* v. *Chicago, Burlington and Quincy Railroad Co. supra.*

The conclusion reached that the statutory formalities as to execution were not complied with also renders it unnecessary for us to consider the question whether the proof shows that testatrix was of sound mind and memory. The fact that there is evidence tending to show that at various times before the will was made she stated she was going to leave a will in favor of Schofield, and that after it had been executed she stated to some of her neighbors that such a will had been drawn, can have no bearing on the question as to whether the will was properly attested.

For the reason that the instrument in question was not attested by the subscribing witnesses in the presence of tes-

tatrix, the judgment of the circuit court is reversed and the cause remanded to that court, with directions to enter an order refusing its probate.

*Reversed and remanded, with directions.*