TRAVELERS PROTECTIVE ASSOCIATION OF AMERICA
*v.* WARD.

[No. 14,629. Filed September 29, 1933. Rehearing denied
February 1, 1934. Transfer denied June 15, 1934.]

*Pickens, Davidson, Gause, Gilliom & Pickens, Owen
Pickens,* and *Howard P. Travis,* for appellant.

*Claycomb & Stump,* for appellee.

SMITH, J.—This action was brought by appellee upon
a certificate of insurance in which the by-laws of the
association constitute part of the contract, and provide
for the payment of "$1,250.00 in case of total and irre-
coverable loss of sight of one eye."

The complaint, in one paragraph, alleged the execu-
tion of the contract of insurance and the injury to appel-
lee through external, violent, and accidental means
whereby appellee's left eye was struck by a piece of fly-
ing steel rendering him totally blind in said left eye, and
causing complete and total loss thereof.

To this complaint, appellant filed an answer in two

paragraphs: (1) A general denial; (2) alleging in substance that appellee did not receive injuries which resulted in the total and irrecoverable loss of the sight of one eye, and that appellant had paid to appellee the sum of $185.70 for seven weeks of total disability and three weeks of partial disability under the terms of the contract, and that said payment was in full of any benefits to which appellee is entitled under his contract.

To the second paragraph of answer, appellee filed a reply in general denial which closed the issues.

The cause was submitted to the court for trial without a jury. On September 9, 1931, the court found for the appellee, and entered judgment in his favor for the sum of $1,165.40.

Appellant seasonably filed its motion for a new trial containing four grounds therefor, only two of which are presented herein, namely: (1) The decision of the court is not sustained by sufficient evidence; (2) the decision of the court is contrary to law.

The overruling of the motion for new trial is the only error assigned for reversal.

Some of the facts of this case were stipulated, among which are: That the appellant was a duly qualified fraternal benefit insurance society, and issued a certificate of membership to appellee which entitled appellee to the payment of $1,250.00 in case of *total and irrecoverable loss of sight of one eye* as a result of injuries received through accidental means; that said certificate was in good standing on the third day of January, 1929, on which date the plaintiff through external, violent, and accidental means, received an injury in which the left eye was struck and pierced by a piece of flying steel; that notice was given to appellant within 30 days, and that all the terms of the certificate of membership were complied with to entitle him to receive benefits in accordance with its terms; that appellant had given ap-

pellee a check in the sum of $185.70 on account of seven weeks total disability and three weeks of partial disability which appellant claimed was in full satisfaction of its liability.

The sole question presented in the appeal is, Did the injury to appellee's left eye cause a total and irrecoverable loss of the sight thereof?

Two physicians who specialized in the care of the eye, ear, nose, and throat testified on behalf of appellee. One of them was Doctor Campbell, of Detroit, Michigan, a specialist who had been engaged in his profession 43 years. The evidence showed that the appellee received an injury to his left eye on January 3, 1929, and immediately went to Doctor McDonald, who sent him to Doctor Farris, a specialist, of Newcastle, Indiana. Doctor Farris did not treat the eye, but sent appellee to one Doctor Don Campbell, of Detroit, who operated on the eye and removed a piece of steel therefrom by means of a magnet; that thereafter a cataract formed on this eye which necessitated a second operation by Doctor Campbell.

As to the sight in his left eye, appellee testified:

"With reference to objects in this courtroom, I can just see a blurry line in front of me. Using my left eye alone in an effort to distinguish the objects on the desk I can't see anything. At the windows I can see dots of light, blurry light. With my left eye only the chandelier looks like several thousand lights. Looking with both eyes everything is blurry. I can correct that blur by closing the left eye, then the vision in the right eye is sharpened. . . . Dr. Don Campbell put glasses on, I don't know what kind, but judge they were cataract glasses. After that when using my left eye, along with my right I saw two objects—double vision, and could not bring only one object to my vision."

Dr. Farris, who first examined the appellee, and who later, on May 7, 1931, after his operation by Dr. Campbell again examined the appellee, said in substance:

"My estimation would be that he lost one hundred per cent of that eye for practical purposes. That was the condition of that eye when examined individually. When examined in connection with the other eye I should say he has no use of the left eye at all. I am quite sure this condition is permanent. . . . It can be corrected to 15 per cent with glasses. He has simple light perception without correction and fifteen per cent with correction."

Dr. Campbell, at Detroit, testified in substance:

"In the right eye his vision was 6/3 of normal, which is about twice the normal vision. In the left eye his vision was 1/60 of normal. . . . At the time of the examination Mr. Ward did not have any practical and useful vision in his left eye. He had no vision at that time that was of practical use in industry. . . . I performed the operation. The operation consisted of opening the eyeball at the juncture of the blue and white of the eye by an incision. Through this incision the point of the magnet was introduced and the foreign body removed by magnetic traction through the wound. I performed a second operation, . . . there was a formation of a cataract. . . . The wound healed kindly. . . . There is no further treatment or operative procedure by which the sight of Mr. Ward's eye can be benefited further. The present condition is permanent. The sight in his left eye consists of 6/4 vision with the use of a strong cataract glass. Mr. Ward's left eye is in such a condition now on account of the removal of the cataract, which is the lens of the eye that he is unable to focus rays of light excepting by the use of very strong cataract glass. The difficulty which arises from the use of so strong a glass is that there is an inability for the two eyes to co-ordinate and to be used together. The strong glass produces distortion and double vision. Consequently, he is unable to use the two eyes together and must use either one or the other with its fellow excused from the visual act. Mr. Ward has lost practical and useful sight in his eye as far as its use in industry is concerned, unless he uses a very strong cataract glass, which although it gives him good vision, he is unable to use in connection with the other eye."

The appellant called Dr. Daniels, who testified as an expert as follows:

"If he (appellee) was using his eyes, without any glass on his left eye, he still had vision in the left eye, but he was not using it. *He could not use it and use the right eye at the same time.* He couldn't use both eyes at the same time with glasses over both eyes. If he attempted to use both of them at the same time with glasses over them he would have confusion. . . . It is impossible in his case to make glasses so that he could get a clear vision in each eye so that he would have but one vision, and in order to get along he must actually use but one eye. That would be the case even though he had the cataract lens over the injured eye."

On recross-examination, Dr. Daniels said:

"By putting on a glass with the proper correction Mr. Ward will recover the vision of the left eye but he could not use it along with the right eye. *There is no possibility of recovery of it as binocular vision.*"

"Binocular vision," as defined by Webster's New International Dictionary, means "employing both eyes at once."

The quotations from the testimony of the witnesses above set forth are from the appellant's brief.

The lower court found that the appellee had a total and irrecoverable loss of the sight of one eye. We think there is sufficient evidence to support this finding, and that the judgment should be affirmed. While it is true that under certain conditions, appellee has sight in his left eye, it is equally true and expert testimony on both sides shows that appellee can use but one eye at a time. If he can use but one eye at a time, he has lost the sight of the other eye. There are numerous cases from other jurisdictions bearing upon this subject. In the case of *Pan-American Life Insurance Co.* v. *Terrell*, 29 Fed. Rep. (2nd) 461, a policy containing a provision for the payment of an injury

where the "loss of the entire sight of one eye if irrecoverably lost," the evidence showed that the injured person had practically no vision, and could perceive only a strong light which he described as light perception. The court said it is quite uniformly held that, if the sight left in the injured eye is of no practical use or benefit, then there is total and irrecoverable loss of the sight of such eye. To like effect, see Couch Cyc. of Insurance Law, section 1685, vol. 7; *Watkins* v. *U. S. Casualty Co.* (1919), 141 Tenn. 583, 214 S. W. 78, 84; *Pan-American Life Ins. Co.* v. *Terrell* (1929), *supra; Lindhout* v. *Brochu & Hass et al.* (1931), 255 Mich. 234, 238 N. W. 231; *Stefan* v. *Red Star Mill & Elevator Co.* (1920), 106 Kan. 369, 187 Pac. 861; *Suggs* v. *Ternstedt Mfg. Co. et al.* (1925), 232 Mich. 599, 206 N. W. 490; *Smith* v. *F. & B. Const. Co. et al.* (1918), 172 N. Y. Supp. 581.

Under the great weight of authorities, some of which are cited herein, there can be no doubt that the appellant is liable under the evidence in this case upon the insurance contract in question. There is no ambiguous or uncertain matter in the contract for insurance, and, if there were, such doubtful or uncertain matter should be construed in favor of the insured. *Hesler* v. *Federal Casualty Company* (1921), 190 Ind. 68, 75, 129 N. E. 325; 32 Corpus Juris 1152, section 265.

There being no reversible error, judgment of the lower court is affirmed.