THE NATIONAL LIFE AND ACCIDENT INSURANCE
COMPANY, INC. *v.* MARTIN.

[No. 27,029. Filed May 24, 1938.]

*Wallace, Randel & Wallace,* for appellant.

*R. H. Mayes,* and *Robert Irwin,* for appellee.

FANSLER, J.—The appellee brought this action to recover upon a life insurance policy issued upon the life of Dimple Lowanda Alexander in which he was named as beneficiary. The policy was issued without a medical

examination, and the insured died within less than two years. The appellant answered, setting up what is alleged to be a material misrepresentation in the application as to the health of the insured. In the application the insured answered that she had never had tuberculosis or any disease of the lungs. It is alleged in the answer that she was afflicted with tuberculosis at the time of the application. There was judgment for the plaintiff.

There is substantial evidence that the insured had tuberculosis of the lungs upon the date of the application and the date of the issuing of the policy, and had been informed of the fact by her doctors. She died of tuberculosis.

The only question presented by the appeal is whether there is a substantial conflict in the evidence upon that subject; whether there is substantial evidence that she did not have tuberculosis of the lungs at the time of the application and the issuing of the policy.

The application for the policy was signed on the 25th day of April, 1933, and the policy was delivered on May 1st of that year. Dr. Conklin, a witness called by the appellee, testified that the insured died on February 3, 1935; that he treated her from September 13, 1933, until her death; that she had pulmonary tuberculosis on September 13, 1933; that his case history of her showed that she had not been well since the winter before, when she had the "so-called flu"; that when he took the history and went over the case, "as sick as she was," it was obvious that she had had tuberculosis for some time previous to September 13, 1933; for how long he could not say; and that she was entirely too sick at that time to say; that his examination on September 13th disclosed that she had been losing flesh over a period of time, and was weak and exhausted and tired easily. Dr. Bittner, called by the defense, testified that he saw the insured, first, on March 15, 1933, and treated her in her home at

Paris, Illinois; that on that date she had a temperature of 102, had rattles in her chest, interruption in her breathing, a persistent cough, and coughed up sputum; that he had an analysis made at Springfield, of which he got a report on March 21, 1933, at which time he informed the insured that she had tuberculosis, and gave the report of the analysis from the State Board of Health of Illinois to her family; that he treated her during the period from March 15, 1933, until August, 1933; that she was suffering from tuberculosis the first time he saw her, and on April 25th and on May 1, 1933.

The evidence discloses that the father and mother of the insured, at whose home Dr. Bittner treated her, are living. They were not called as witnesses by either side, and Dr. Bittner's testimony, corroborated as it is by the testimony of Dr. Conklin, is not directly disputed. But the appellee points to the details of Dr. Bittner's testimony to the effect that, at the time of his treatment, she was not in a condition to come to his office, and that she was in bed when he treated her, and that he advised her not to go to Terre Haute because she needed rest and should be in bed, and to the testimony of the appellee, who lived at Terre Haute, Indiana, and at whose home the application for insurance was taken, and the members of his family, that the insured appeared to be in good health at the time of the application, except for a little cold, and their testimony that the insured came to their home at Terre Haute, the first time, in December, 1932, and was there the "bigger" part of January, went back home in February, came back to their home in March, and went between her home and theirs on various occasions until July, and that during the time she was at the Martin home she was not treated by a doctor, but helped with the housework and went about to dances and parties. A son of the appellee, who was engaged to be married to the insured, testified that she was at his

father's home during part of the month of March, 1933. The appellee expressed the opinion that Dr. Bittner must have treated her in March, 1934, and not in March, 1933. But this is a mere opinion, since it is clearly disclosed that the Martins could not fix definite dates, and their testimony does not conflict with Dr. Bittner's, since it is conceded that the insured was in her own home in Illinois during part of the month of March, and at other times between that date and July, largely upon weekends. Dr. Bittner fixed definite dates from records, but the Martins did not, and Dr. Conklin's testimony supports Dr. Bittner's as to the treatments in 1933, since Dr. Conklin had the insured in charge during 1934, and testified that she, in his opinion, had had tuberculosis for some time prior to his being called in upon the case in September, 1933, four and a half months after the policy was delivered. Dr. Bittner was shown to be a disinterested witness. As we have pointed out, the parents of the insured, with whom she lived, and who would have known whether he called upon her in March, 1933, were not called by either side.

In *Metropolitan Life Insurance Co.* v. *Wolford* (1912), 49 Ind. App. 392, 97 N. E. 444, and *Western & Southern Life Insurance Co.* v. *Ross, Adm'r* (1930), 91 Ind. App. 552, 171 N. E. 212, it is held, correctly we think, that the testimony of trained physicians, who examine and treat the patient, and testify that by their own examination they discovered a diseased condition, is not to be controverted by the opinion of a lay witness. A full examination of the testimony discloses that there is no positive testimony that the insured did not have tuberculosis at the time of the application, and there is the positive, unimpeached testimony of Dr. Bittner that she was so afflicted, and that he informed her of it, which is strongly corroborated by the testimony of Dr. Conklin, the appellee's witness. There is no

clear or positive evidence to support the contention that Dr. Bittner could not have treated her upon the date fixed by him for the reason that she was not at her home in Paris, Illinois, but at Terre Haute, Indiana. There is no attempt on the part of the appellee's witnesses to fix dates. They testified from memory, giving only approximate dates, and all concede that she made visits back and forth during the period involved. It is argued that Dr. Bittner said the insured was in bed when he treated her, and this is true, but he did not testify that she was unable to leave her bed. He prescribed rest, and advised against her going to Terre Haute, but did not testify that she was physically unable to go. The evidence is readily reconciled. It may well be true that she was in bed, resting as he advised, when he treated her, but that she arose frequently, and went on numerous visits to her friends at Terre Haute.

In *Continental Life Insurance Co.* v. *Yung* (1888), 113 Ind. 159, 161, 15 N. E. 220, 221, it is said: "Whenever it can be said that there is clear and convincing proof of an essential fact, contrary to the finding of the jury, and that the verdict is without any evidence fairly tending to sustain it, the verdict ought not to stand." There is clear and convincing proof that the insured was suffering from tuberculosis, and had been informed of the fact prior to the application for the policy, and that she continued to be afflicted with it until her death. There is no substantial evidence conflicting with this testimony. All of the evidence can be reconciled, so that all of the witnesses may be believed, upon the theory that Dr. Bittner treated the insured in March, 1933, and informed her that she had tuberculosis, and that she made the several visits to the Martins, concerning which they testified, returning between visits to her home in Illinois, where Dr. Bittner treated her, and found her confined to her bed for rest, as he had advised. There

is therefore no substantial conflict in the evidence. The misrepresentation was material to the risk.

Judgment reversed, with instructions to sustain the appellant's motion for a new trial.