WESTERN & SOUTHERN LIFE INSURANCE CO. *v.* DANCIU, ET AL.

[No. 27,348. Filed April 30, 1940. Rehearing denied June 10, 1940.]

*Bomberger, Peters & Morthland,* of Hammond, (*Joseph O'Meara,* of counsel) for appellant.

*William J. McAleer, Francis J. Dorsey, William L. Travis,* and *Raymond B. Young,* all of Hammond, for appellees.

Roll, J.—On February 23, 1932, Bucura Corcodelu applied to appellant for a policy of life insurance. On March 10th, she submitted to a physical examination by appellant's examining physician and was passed by him as a good risk. The policy was issued as of that date and was delivered on April 1st. Mrs. Corcodelu died on September 7, 1932. On March 9, 1934, within the period of contestability, appellant filed an action against appellees to cancel the policy. Afterwards appellees filed a cross-complaint to recover on the policy, and the case was tried on the cross-complaint and the answers thereto. The second, third, and fourth para-

graphs of answer questioned the state of health of the insured at the time the policy was issued.

The jury returned a verdict in favor of appellee and the court rendered judgment accordingly.

The error assigned is the overruling of appellant's motion for a new trial.

Appellant states in its brief that the principal question presented by this appeal is "whether the court properly submitted to the jury the negative testimony of lay witnesses concerning their observation and conclusions as to the health of the insured as against the undisputed expert medical testimony showing the existence of tuberculosis." The question, as put by appellant's attorney, is not quite accurate as the facts hereinafter will disclose.

The facts are in substance as follows: As stated above, Bucura Corcodelu made application to appellant for a policy of life insurance, and, on March 10th, Dr. Siegmund Reich, as the examining physician for appellant, went to the home of Bucura Corcodelu, and conducted a physical examination of her, and recommended her as a good risk. He testified that he examined her lungs with a stethoscope and found nothing wrong; that he did not hear any rales at that time. He stated on cross-examination that Mrs. Corcodelu would not remove her clothing, and that he made the examination of her lungs through her clothing. It does not appear affirmatively in the record that Dr. Reich, or any one else, requested Mrs. Corcodelu to remove her clothing in order for Dr. Reich to make a more thorough examination of her lungs.

The agent that solicited the application on February 23rd, delivered the policy to the insured on March 1, 1932. During the second week in April, the insured became ill. Anna Madrea, a neighbor and close friend

of the insured, called Dr. Dasse. He testified that he made a physical examination and found the insured had a uterine hemorrhage, and a cough. He treated his patient for the hemorrhage, and examined her chest with a stethoscope. He found numerous rales in both sides of her chest. He took some sputum of his patient and sent it to the Molay Medical Laboratories in Chicago for examination for tubercle bacilli. The laboratory test did not reveal any tubercle bacilli. There was evidence that the doctor told her she had the flu and for her to stay in bed a few days and she would be all right. He testified that he made no such statement and also stated that it was his opinion at the time that she had beginning tuberculosis, and recommended she go and see Dr. Parramore. Dr. Dasse had no record of his visits to see the insured, and testified purely from memory. On April 27th, the insured went to Crown Point to the sanitarium, but did not enter as a patient until June 4, 1932. A nurse, employed in the sanitarium took the history of the case as given by Bucura Corcodelu, and, according to Dr. Parramore, she stated that she had had a cold for about two months, and during that time she had lost weight, coughed, had no appetite, and had suffered loss of strength. Bucura Corcodelu, as stated above, was admitted to the sanitarium on June 4th, at which time her symptoms were improved. X-ray pictures were taken on June 7th, which showed scattered areas of infiltration over the lower half of the right lung and throughout the left lung. She remained in the sanitarium until the first part of July when she went home. Dr. Parramore testified that, from his examination of the patient, and from the history of the case as given to him, it was his judgment that Bucura Corcodelu had tuberculosis on April 1, 1932, the date of the delivery of the policy.

Dr. H. C. Groman, in answer to a hypothetical question based upon the facts, testified to by Dr. Parramore, testified favorable to appellant.

Appellee introduced evidence of several lay witnesses, who had known Bucura Corcodelu intimately for several years. Anna Madrea, a witness who lived just across the street from Mrs. Corcodelu, saw her almost every day, and some days saw her several times. These witnesses testified to the following facts in substance; that up to and prior to the second week in April, 1932, Mrs. Corcodelu had not been sick, had worked every day, did all her own house work, and, in addition, looked after the repair and cleaning of the walls of three or four rental properties owned by her. About the last part of February, a friend of Mrs. Corcodelu, in Chicago, died. Mrs. Corcodelu went to the home and there helped with the cooking for two or three days. In about two weeks the family of her friend in Chicago came to visit her and other friends in Hammond. All of them went on a picnic at Crown Point. About this time, on account of rain, water accumulated in the basement of Mrs. Corcodelu's home; she waded the water to open the sewer, and worked two or three hours in cleaning the basement of her home. About two or three days thereafter, she developed a severe cold and a hemorrhage of the uterus. This was the occasion when Anna Madrea called Dr. Dasse. Up to this time, all of appellee's witnesses testified that she was active, worked all the time, had lost no weight, and that they had never heard her cough. This was about the latter part of the second week in April, and about two weeks before she went to the sanitarium at Crown Point.

Appellant objected to the admission of the testimony of appellee's lay witnesses on the theory that lay witnesses, under the facts presented here, are not com-

petent to contradict the testimony of expert medical witnesses as to the state of health of the insured on a day named. It is appellant's contention that the testimony of the doctors, to the effect that the insured was not in good health at the time of the delivery of the policy, because she was afflicted with tuberculosis, is conclusive, and that the testimony given by lay witnesses as to the condition of the insured's health at that time should be disregarded.

It must first be noted that no doctor testified as a fact that the insured had tuberculosis on April 1, 1932, the date of the delivery of the policy. Their testimony went no further than to say that *in their opinion*, the insured had tuberculosis at that time. It should also be noted that the opinion of the doctors was based partly upon the history which Dr. Parramore said the insured gave at the time she first came to the sanitarium. The history was given to and taken down by a nurse employed in the institution. This history, in substance, showed the insured was 50 years old, that she had been sick for a period of two months, that she had a cough with copious expectorations, that there were streaks of blood in her sputum, that she had pain in her right chest, that she had lost weight, had loss of strength, shortness of breath, poor appetite, and indigestion. Dr. Parramore testified that the patient told him that all of the above symptoms had been present for two months. Neither Dr. Parramore, nor any other doctor testified that he ever saw any blood in her sputum, that she expectorated copiously, or that her appetite was poor, or in any way described her appearance that would indicate that she had in fact lost weight, or that she had any outward symptoms of tuberculosis. The history, as above set out, was assumed to be true by appellant's witnesses and entered into and became a

partial basis, at least, upon which they concluded that the insured had tuberculosis on April 1, 1932. Dr. Parramore was asked if it was possible that there was an error in the notes made by the nurse in that the patient said she had been sick for "two weeks" instead of "two months," to which he answered that that was possible, but that he did not think it was a mistake.

As noted above, several witnesses for appellee testified that prior to two weeks before she went to the sanitarium, she had been in good health; that she had no cough, etc. It is also important to note here that Dr. Siegmend Reich, who was the examining physician for appellant insurance company, and who made a physical examination of the insured on March 10, 1932, and who examined her lungs with a stethoscope, said he found nothing wrong and passed her as a good risk. This examination was made less than two months before the insured went to the sanitarium when she was supposed to have stated that she had been sick for two months and had coughed with copious expectoration during all that time. If the insured was in the physical condition as assumed by appellant's expert witnesses, and as appeared in the nurses' notes, designated as the history of the case, it would seem that Dr. Reich would have detected the presence of some of them at the time he made the examination for his company. The very purpose of the examination was to discover the presence of any disease. Even a lay witness could have observed these conditions. Under all the above facts the jury might, and probably did conclude that Bucura Corcodelu, in giving the history at the sanitarium on April 27, 1932, stated that she had been sick for a period of "two weeks" instead of "two months."

In studying the evidence given by the doctors on behalf of appellant, none of them testified that they found

any blood in the sputum of the insured at any time. Neither does any witness testify to the effect that the patient exhibited any evidence of loss of weight, loss of appetite, shortness of breath, or that she coughed with copious expectoration. Dr. Parramore, who made a physical examination, did not testify to any of the above facts. He apparently assumed the facts as revealed by the history taken by a nurse in the employ of his institution. X-ray pictures were taken of the insured's lungs after she was admitted to the sanitarium on June 4, 1932. Dr. Parramore testified that he, at that time, examined her lungs with a stethoscope and discovered moist rales and the x-ray pictures showed evidence of scattered areas of infiltrations. From an examination of the x-ray pictures, and considering the history given, it was his judgment that the patient had tuberculosis and that it was of several months' duration. Also that in his judgment the patient had tuberculosis on April 1, 1932.

The evidence also discloses that after the insured was admitted to the sanitarium on June 4th, at least ten laboratory tests were made of her sputum. No tubercle bacilli were found in any test. The doctors testified that the negative result of the tests was not necessarily conclusive. That there are cases where tests of this kind did not show tubercle bacilli, and it was known definitely that the patient had tuberculosis, but nevertheless, the result of such tests was competent evidence to go to the jury.

In *National Life and Accident Ins. Co. v. Martin* (1938), 214 Ind. 218, this court said:

"In *Metropolitan Life Insurance Co. v. Wolford* (1912), 49 Ind. App. 392, 97 N. E. 444, and *Western & Southern Life Insurance Co. v. Ross, Adm'r* (1930), 91 Ind. App. 552, 171 N. E. 212, it

is held, correctly we think, that the testimony of trained physicians, who examine and treat the patient, and testify that by their own examination they discovered a diseased condition, is not to be controverted by the opinion of a lay witness."

We adhere to that rule.

Appellant seeks a reversal of the judgment herein upon the proposition that the facts in this case bring it within the rule above stated. We do not think the facts justify such a conclusion, and therefore the rule announced in the *National Life and Accident Ins. Co.* v. *Martin, supra,* is not controlling in this case. We think the case of *Western, etc., Life Ins. Co.* v. *Ross, Adm'r.* (1930), 91 Ind. App. 552, 562, 563, is more analogous to the facts in this case. It was said in that case:

"It will be noted that in each of the cases upon which appellant relies, the witnesses, medical experts testified not merely as such by giving an opinion upon a given state of facts, but, as scientific men, especially trained in a branch of science. They each gave their judgment, their conclusion, based upon *facts* within their own personal knowledge. Their several answers were *not based upon any assumed hypothesis.* In the case at bar, the two physicians who testified as to the cause of the death of the insured, that she died of pulmonary tuberculosis, each testified as an expert in medical science, and their testimony as to the disease which caused the death of said insured, was not, under the authorities cited, and other authorities could be added, a matter to be controverted by the opinion of a lay witness; the cause of the death as thus established was not to be so controverted. But, when said physicians were called upon to express *their opinion* as to the time of duration of said disease prior to the death of the insured, they were asked to enter into a field, *not of scientific knowledge,* but of speculation."

In Vol. 8, pp. 7099-7100, Cyclopedia of Insurance Law, by Couch, we think the rule is correctly phrased. He says:

"The opinions of lay or nonexpert witnesses often are admissible in evidence, provided they are not mere inferences or conjectures, but are based upon facts which appear in evidence, it being clear that to render a lay opinion admissible the facts upon which it is based must be put in evidence. For instance, an opinion of a nonexpert witness concerning the mental condition of a litigant with whom he has been acquainted for many years, when founded upon facts within the personal knowledge of the witness, and sworn to by him before the jury, is admissible in an action wherein such condition is a material subject of inquiry. So, the husband of insured may, where he states the facts upon which his opinion is formed, testify that in his opinion she had recovered from an attack of malaria. And, if within his knowledge, a layman may testify as to the strength, vigor, and apparent physical condition of an insured, and as to the presence or absence of symptoms indicating disease, and even as to the existence of some forms of disease which are so common and so well understood as to be within the knowledge of a layman, but he cannot diagnose diseases, or testify as an expert in reference thereto. Again, a lay witness intimately acquainted with insured for many years may testify as to his abnormal physical condition after he became ill, as observed by him. So, the opinion of a nonexpert witness as to the relation of facts, described by him, to the cause of death, is receivable in evidence. In some instances a nonexpert witness may be permitted to express his opinion where it is evident that no verbal description is adequate to place all the details and shades of appearances so before the jury that, unaided by the opinion of an eye-witness, they can arrive at a correct conclusion."

Again, on page 7101, it is stated:

> "Where the testimony of a physician as to the condition of an insured at the time of the application for insurance is largely a matter of opinion, based to a considerable extent on statements of the insured, lay witnesses may be permitted to testify as to the apparent condition of insured's health at the time of making the application and for a reasonable time prior and subsequent thereto."

The doctors who testified in this case pointed out the symptoms of tuberculosis. These symptoms are generally known by the lay people, and are easily and readily detected. The lay witnesses who testified on behalf of appellee were well acquainted with the insured; they had known her for many years. Some of them, members of her family, were living in her home during all the time here in question. Another witness lived just across the street from her. They were very good friends. She testified that she saw and talked with the insured almost every day. All of these witnesses had full opportunity to observe the physical condition of the insured, and it is reasonable to assume that if Bucura Corcodelu, during the months of March and April, had suffered loss of weight, loss of appetite, had coughed with copious expectoration, and her sputum had been streaked with blood, such facts would have been observed by them. All testified that no such condition existed. Since all the above enumerated symptoms are obvious to the layman, he should be allowed to testify concerning such matters. Such evidence has been held by this court to be admissible. *Prudential Ins. Co.* v. *Diffenbaugh, Adm'r.* (1918), 68 Ind. App. 699; *The Carthage Turnpike Co.* v. *Andrews* (1885), 102 Ind. 138; *Western, etc., Life Ins. Co.* v. *Ross, Adm'r.* (1930), 91 Ind. App. 552. We think the evidence of the lay witnesses under the

facts of this case was competent and the court did not err in admitting the same.

It may be well to observe that the report of the examining physician was competent evidence upon the condition of the insured's health at that time, which ■ was to the effect that the insured was in good health at that time, and, if accepted as true by the jury, was sufficient to support the verdict.

The testimony of some of the physicians who testified for appellant was not of a character to inspire the utmost confidence.

Since the conclusion of the expert medical witnesses that the insured had tuberculosis on April 1, 1932, was predicated upon the assumption that the state ■■ of facts contained in the history the insured related to the nurse were true, taken in conjunction with the information obtained from the x-ray pictures, such an opinion lost most of its probative force if the jury believed the testimony of the lay witnesses. This necessarily follows because the probative force of opinion evidence rests largely in the facts upon which such opinion rests. The record does not disclose what the opinion of the expert medical witnesses would have been had the facts as testified to by appellee's lay witnesses been substituted for the facts contained in the history. The jury evidently believed appellee's witnesses, which they had a right to do, and if so, the verdict was supported by sufficient evidence and was not contrary to law.

The other questions presented were not of controlling importance. Most of them are predicated upon the theory that it was reversible error to admit the testimony of lay witnesses as herein above stated. We do not think we would be justified in extending this opinion in a discussion of the minor questions. We have exam-

ined each question presented and find nothing that would justify a reversal of the judgment.

Judgment affirmed.

NOTE.—Reported in 26 N. E. (2d) 912.

### ON PETITION FOR REHEARING.

ROLL, C. J.—Appellant, in his petition and brief on rehearing insists that the court failed to discuss and decide an important question which it properly presented by the record and briefs. This question related to the alleged error of the court in admitting appellee's exhibit 4 in evidence. This exhibit was a report from the Molay Medical Laboratories to Dr. Dasse on analysis of sputum, made at his instance and request in connection with his professional care of insured and exhibited to the patient in the course of his treatment.

Dr. Dasse was called to the home of the insured during the month of March, at the time the insured was suffering from a hemorrhage of the uterus and with a cold. He testified as a witness for appellant, and his evidence was to the effect that he thought the insured had tuberculosis at that time; that he had an analysis made by the Molay Medical Laboratories of his patient's sputum for tubercle bacilli. The report of the laboratory was in the form of a letter from them. This report showed no tubercle bacilli, and the letter was shown to the insured. On cross-examination of Dr. Dasse, he admitted sending the sputum to the Molay Laboratories for analysis and receiving this report. The report was identified and offered and received in evidence as part of such cross-examination over the objection of appellant. Appellant contends that this was error. The defendant objected to this evidence, because it did not tend to impeach Dr. Dasse's testimony. The record shows that Dr. Dasse had testi-

fied that he had examined the patient and prescribed for her; that it was his opinion that at that time his patient was suffering from beginning tuberculosis. Exhibit 4, therefore, was competent to show what knowledge or information he had respecting the matter about which he testified. He stated that he sent the sputum to the laboratory for the purpose of gaining information as to his patient's condition; to discover whether or not tubercle bacilli was present. He was furnished this information by a letter, and it was competent evidence as a part of appellee's cross-examination. The fact that it was also shown that a negative report does not necessarily mean that the patient does not have tuberculosis does not render the exhibit objectionable. That fact only affects the weight to be given such evidence. We do not think it was reversible error to admit appellee's exhibit No. 4 in evidence.

We have again considered the questions discussed in the original opinion and find no reason to change or modify what we said therein.

Petition for a rehearing denied.

NOTE.—Reported in 27 N. E. (2d) 763.