THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *v.* ARNOLD C. SHORT.

[No. 1-375A48. Filed August 12, 1975.]

*Robert M. Messick, Dongus, Stein, Cregor, Messick & Brown*, of Indianapolis, for appellant.

*Joseph B. Barker, Kagan and Barker*, of Martinsville, for appellee.

LOWDERMILK, J.—Defendant-appellant (Equitable) appeals the judgment of the trial court that the injury to plaintiff-appellee's (Short's) right eye is total and irrecoverable and thus covered under the terms and conditions of the group accident, death and dismemberment policy sued upon.

## FACTS

Short, on June 24, 1970, was in the employ of Indiana University as a deliveryman at the medical center campus. After working that date he returned home and attempted to fix his lawn mower. However, while so doing a loose belt snapped in two pieces and struck him in the right eye. He was taken to Methodist Hospital where he remained for 31 days.

During this time, Short was treated for increased pressure in the eye which was caused by internal hemorrhaging.

Upon his release, Short stated he was advised by the attending physician that further surgical procedures would be necessary, to-wit:

"Then they said, I could go home but I would have to have that split open and turned, it was up like a disc and would have to turn it flatway like it should be normally."

In compliance with such advice, Short entered Veterans Hospital[1] and had the surgery performed. Thereafter, Short was advised that further procedures similar to a cataract operation were necessary, and that contact lenses would be fitted.

Although Short went through with the suggested procedures, the attempt to fit a contact lense was abandoned because it caused considerable irritation, as well as double vision.

Short's evaluation of his condition following the above procedures was that

". . . I just go around—I am blind in the right eye, I can't see anyone coming, I can see contrast colors, I can see blue, red, bright blue, but to tell if you had eyes, nose or anything on your face—there is a blur—so that is what happened."

After Short was dismissed from Veterans Hospital, he returned for out-patient care on several occasions; the last time in the spring of 1974. On his last visit, the doctor was unavailable but Short was advised to make another appointment. However, since the eye was not causing any discomfort, no appointment was made.

At trial, there was no medical evidence from any of the physicians who treated Short in the hospitals. The only medical evidence was given by a general practitioner, to whom Short was sent by his attorney after the present claim was filed. The doctor stated that he saw Short "once" in

---

1. Short's condition upon entering the hospital was diagnosed as (1) Traumatic cataract—right eye; (2) Secondary glaucoma; (3) Resolving hyphena; (4) Healed iris tear; (5) Obesity.

1972, and had a "very brief" history on Short, as compiled only by Short's comments.

Although a complete examination was impossible due to the inability to see past certain obstructions, the diagnosis was that Short ". . . was essentially blind in the right eye."

Asked for a prognosis, the doctor responded that:

"A. Well, a prognosis is a little difficult as to just what the actual cause of the blindness is. Untreated, prognosis is nil as a permanent blindness. The question did occur to me as to the possibility that this corneal injury—whether it might be possible that some sort of corneal surgery could improve this, but I'm not qualified to say.

Q. What I was meaning to ask—As it stands now, it is a permanent blindness. It's not a temporary blindness.

A. Untreated, it's definitely permanent."

At the conclusion of the trial, the court awarded Short the full amount due under the policy for the loss of one eye.

## I.

The only question is whether the evidence supports the judgment that the injury was compensable under the terms of the applicable insurance policy.

The policy involved provides for payment when there is injury caused by ". . . directly and exclusively by external, violent and purely accidental means. . . ." The schedule of losses for dismemberment, however, contains the following explanation:

"With regard to hands and feet, loss shall mean dismemberment by severance at or above wrist or ankle joints respectively; *with regard to eyes, total and irrecoverable loss of sight.*" (Emphasis added.)

Equitable's argument is simply that there is no evidence whatever to support a finding that the injury to Short resulted in a total *and* irrecoverable loss of sight in the right

eye. Further, Equitable contends that total loss is not the same as irrecoverable loss, in that one could have a temporary total loss which is capable of repair or correction. In support of this argument, Equitable notes that the only medical evidence was that loss of sight was permanent *if untreated;* citing *Wallace* v. *Insurance Company of North America,* 415 F. 2d 542 (6th Cir. 1969).

Finally, Equitable argues that the decision below was based on speculation and possibility rather than hard fact. *See, Prudential Insurance Company of America* v. *Van Wey* (1945), 223 Ind. 198, 59 N.E.2d 721. Equitable contends that the medical evidence presented supports their position, and that such evidence cannot be "controverted by opinion or by judicial speculation." *Beaman* v. *Hedrick, B/N/F* (1970), 146 Ind. App. 404, 225 N.E.2d 828; *Western & Southern Life Ins. Co.* v. *Danciu* (1940), 217 Ind. 263, 26 N.E.2d 912.

Equitable concludes that the unambiguous words of the policy clearly defeat any recovery by Short.

In response to the above arguments, Short contends that although no Indiana court has construed the word "irrecoverable", it should be given the same meaning as "permanent," as that word is defined in *Metropolitan Life Insurance Company* v. *Frisch* (1946), 116 Ind. App. 657, 65 N.E.2d 852, to-wit:

"It is a matter of common knowledge, we think, that in many instances of total disability a prognosis as to permanency, in the sense for which the appellant contends, [i.e., continuing until death] cannot be made with absolute certainty and occasionally total disability, which at a given time gives every indication of being permanent, with the passage of time and through the efforts of nature and improved medical technique is entirely cured or is alleviated to the extent that it becomes partial only. That such a situation may develop is recognized by the very contract here under consideration through its provisions concerning periodical proof of continuing total disability and the cessation of payments in the event of recovery. Therefore, *it seems to us that the word 'permanent' as used in disability benefit contracts is descriptive of the nature of the disability*

*rather than of its duration,* . . . and that any affliction of a disabling nature which, in all reasonable probability, will continue indefinitely with no present indication of recovery, is a permanent disability for the purpose of beginning the payment of benefits and if thereafter total disability ceases the payments cease [Citations omitted.] To hold that there is no liability on a disability contract until it becomes absolutely certain that the insured's incapacity will continue until his death would, in many cases, convert such a contract into a policy of life insurance and defeat the very purpose of disability insurance which is designed to sustain the insured during the years of his incapacity to earn. [Citation omitted.]" (Emphasis added.)

Short maintains that the policy language is ambiguous, and in such situations, the ambiguity should be resolved in favor of the insured on the reasoning in *Frisch, supra.*

Finally, Short contends that the lay, medical and documentary evidence was sufficient to support the decision of the trial court.

## II.

In deciding the issue before us, we must look only to the evidence most favorable to appellee Short. The decision of the trial court will not be disturbed where there is sufficient evidence of probative value to support it, unless the decision is contrary to law. *City of Indianapolis Through Dept. of Transp.* v. *Medenwald* (1973), 158 Ind. App. 128, 301 N.E.2d 795. A decision will be considered contrary to law only where the evidence leads to a single conclusion, and the trial court has reached an opposite conclusion. *Hays* v. *Hartfield L-P Gas* (1974), 159 Ind. App. 297, 306 N.E.2d 373.

Although the ultimate question is whether the evidence is sufficient to support a finding that Short brought himself within the policy terms, we must first address the contentions of the parties with regard to the proper meaning of the word "irrecoverable."

Short contends the word is ambiguous, and Equitable, of course, takes the opposite position. These statements by the parties are not alone sufficient to permit this court to construe the policy term in question. Before a contract, or a term therein, is considered ambiguous, it must appear that reasonably intelligent persons would differ upon reading it. *Jeffries* v. *Stewart* (1974), 159 Ind. App. 701, 309 N.E.2d 448. It is not sufficient that the parties on appeal assert different interpretations of the contract or term. *O'Meara* v. *American States Ins. Co.* (1971), 148 Ind. App. 563, 268 N.E.2d 109.

We hold that the word "irrecoverable" as used in the instant contract is *not* ambiguous. The root word "recover" has a well understood meaning, i.e., to regain, put back to a former state, or recapture.[2] We believe the word "irrecoverable" is commonly understood to mean *not* able to regain, et cetera. This, we feel is the plain and ordinary meaning properly assigned to the term presently in dispute. *Jeffries, supra; O'Meara, supra; State Farm Fire & Cas. Co.* v. *Ackerman* (1972), 151 Ind. App. 464, 280 N.E.2d 332.

The remaining question is whether the evidence was sufficient to show that the injury to Short's eye was total and not capable of restoration or repair.

The testimony of Short adequately detailed the cause of the injury, the effect of the injury, the general course of treatment and the state of injury at the time of trial. There can be little dispute that Short's testimony was pertinent and properly admitted.

The only medical testimony bearing on whether the injury was irrecoverable was given by a general practitioner who observed Short once, more than two years after the accident occurred. The doctor could not determine the cause of the injury, but concluded that if the eye were untreated, the injury would be "permanent." This prognosis, however, is at best

2. *See* Webster's Seventh New Collegiate Dictionary 716 (1965).

guarded, since the doctor stated he was unqualified to determine whether there were surgical procedures available to improve the condition of the eye.

Further, although Short testified as to certain procedures which *had* been performed, there was no evidence that such procedures were the only ones available, or, if there were further procedures, that they were prohibitively dangerous or remote.

We conclude that there was no evidence presented which would allow a decision *either way* as to the recovery by Short of vision in the injured eye. We do not believe that the evidence most favorable to Short, nor inferences therefrom, permit the conclusion that the loss of sight was not recoverable. We emphasize, however, that we reach this decision because there was no evidence of probative value upon which the trial court could have based its decision. Aside from vague evidence by Short concerning past operations, the only evidence relevant to recoverability is the qualified statement by the doctor that the blindness was permanent *if* untreated. Neither this court nor the trial court has been presented with evidence which would decide the issue of recovery of sight.

In this regard, we find *Frisch, supra,* instructive. However, it is not necessary to further discuss that decision, for even if we were to expressly adopt the holding therefrom, our present decision would be the same.

Inasmuch as we feel a remand is necessary, it is appropriate that we comment on the nature of evidence we feel is essential to a final resolution of this problem.

We have already determined that the word "irrecoverable" is not ambiguous. What we are concerned with at this point is the evidence which may be asserted to prove or disprove the fact of irrecoverability.

The courts of various jurisdictions are in conflict as to when sight is recoverable, and there appears no Indiana case

precisely on point. *Traveler's Protective Ass'n* v. *Ward* (1933), 99 Ind. App. 97, 187 N.E. 55, relied upon by Equitable is distinguishable in this respect. In *Ward,* a physician testified in part that:

> ". . . I performed the operation. The operation consisted of opening the eyeball at the juncture of the blue and white of the eye by an incision. Through this incision the point of the magnet was introduced and the foreign body removed by magnetic traction through the wound. I performed a second operation, . . . there was a formation of a cataract. . . . The wound healed kindly. . . . *There is no further treatment or operative procedure by which the sight of Mr. Ward's eye can be benefited further."* (Emphasis added.)

Thus, there was evidence from which the court could have concluded that the injury was irrecoverable.

We conclude that evidence offered on the issue of recovery of sight should focus on the existence of presently available medical or surgical techniques. Such procedures should not be so speculative, dangerous or experimental in nature that a reasonably prudent person would reject them as adversely affecting his general health or the functioning of the remaining sighted eye. Further, such procedures should not be so chronologically remote that an insured is denied recovery on the basis of *possible* procedures which have yet to be developed and tested. *See, Reliable Life Ins. Co.* v. *Steptoe* (1971), Texas, 471 S.W.2d 430; *Bilsky* v. *Mutual Benefit Health & Accident Ass'n* (1944), 49 N.Y.S.2d 149; Annot., 87 A.L.R.2d 481 (1963).

For the above stated reasons, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

Lybrook, J., concurs; Buchanan, J., participating by designation, concurs.

NOTE.—Reported at 332 N.E.2d 273.