F. M. Grimes, Trading as Rockford Wholesale Candy and Tobacco Company, Appellant, v. Maryland Casualty Company, Appellee.

Gen. No. 9,401.

Opinion filed April 20, 1939.

C. A. Pedderson, of Rockford, for appellant.

Early, Carpenter & Early, of Rockford, for appellee.

Mr. Justice Wolfe delivered the opinion of the court.

The appeal in this case involves the construction of an insurance policy commonly called robbery insurance. F. W. Grimes, doing business as the Rockford Wholesale Candy and Tobacco Company, brought suit in the circuit court of Winnebago county, against the Maryland Casualty Company on an insurance policy for loss he claimed he sustained by a robbery. His contention is that the loss was covered by the insurance policy in question. The case was heard before a jury. At the close of the plaintiff's evidence, the defendant made a motion for a directed verdict. The court sustained the motion and directed the jury to find the defendant not guilty. The jury so found by their verdict and the court entered judgment on the same. It is from this judgment that the appeal is prosecuted.

The appellant, Grimes, was engaged in the wholesaling of cigarettes, candy, tobacco, etc., in the city of Rockford. On August 11, 1937, the appellant instructed his employee, Charles Lindberg to take his truck and pick up certain cigarettes and tobacco at the Northwestern and Illinois Central Freight Stations, located in the city of Rockford. Lindberg secured the cigarettes and tobacco from the Northwestern Freight Station and put them into the truck and drove to the Illinois Central Freight Station. Lindberg backed the said truck directly in front of the east freight door of the station. He turned off the ignition of the truck and walked a short distance on the platform and then went inside of the freight station to secure delivery checks for the cigarettes which he had planned to get. He then walked on the inside of the freight station, back towards where he had parked the truck and met Mr. Martin, one of the freight handlers and gave him the delivery slips and asked him to get the cigarettes and tobacco from the vault. Martin and Lindberg were standing near the freight door where

the truck was parked. This door was closed. Martin opened the freight door and Lindberg discovered the truck was being driven away and it was then approximately 125 feet away from where it had been parked. This was the first that Lindberg knew that the truck had been stolen. It was being driven away at the rate of about 20 miles an hour. Later, the truck was recovered, but the cigarettes and tobacco which had been in the truck were never found. It is conceded the value of the stolen goods was $828.81.

The appellee denied liability under the policy of insurance, on the ground that the alleged robbery, from which the appellant sustained his loss, was not covered by the policy. The policy, under the provision "Definitions, 'Robbery,' Subdivision (c)," provides as follows: "Definitions, Robbery, . . . (c) by any other overt felonious act committed in the presence of such custodian or custodians and of which they were actually cognizant at the time, provided such act is not committed by an officer or employee of the assured."

At the hearing of the case there was another question raised as to whether the insured had taken reasonable precautions to safeguard the property against loss by robbery, but this question is not presented on this appeal. The question before this court is whether under the facts and circumstances as before stated, this robbery or theft of the appellant's goods was committed in the presence of the custodian of the same. The appellant insists that a contract of insurance is always to be liberally construed in favor of the insured so as not to defeat, without a plain necessity, his claim to indemnity, and if the language of the insurance policy, which is prepared by the insurer, is reasonably susceptible of two interpretations, that interpretation which will not defeat the insured's claim must be adopted. This is probably the correct rule of interpretation.

It is also true that the language employed in a contract, is to be given its commonly accepted meaning, applies to contracts of insurance; its qualification that ambiguous language is to be construed most strongly against the insurer does not authorize a perversion of language for the purpose of creating an ambiguity. *Blume v. Pittsburgh Life & Trust Co.,* 183 Ill. App. 295; *Buffo v. Metropolitan Life Ins. Co.,* 277 Ill. App. 366.

It seems to us that the only question for this court to decide is whether the theft of these goods was committed in the presence of the custodian. Our attention has not been called to any Supreme or Appellate Court case where the word, ''presence'' has been defined as pertaining to an insurance policy such as is involved in this case. In the case of *Drury v. Connell,* 177 Ill. 43, the court in discussing the attestation of a will and whether the same was done in the testator's presence state: ''The act of attestation of a will, to be in the testator's 'presence,' within the meaning of the statute, must take place within the uninterrupted range of a testator's vision.'' In *Calkins v. Calkins,* 216 Ill. 458, the court was also discussing whether the attestation of a will had been done in the testator's presence, and we find the following: ''An attestation is not in the presence of the testator, although the witnesses are in the same room and close to him, if some material obstacle prevents him from knowing of his own knowledge, perceiving by his senses the act of attestation.'' In *Schofield v. Thomas,* 236 Ill. 417 the court uses this language: ''This court has frequently held that the attestation of a will, to be in the presence of the testator within the meaning of the statute, must take place within the uninterrupted range of testator's vision; that the 'presence' of the testator means contiguity, with such an uninterrupted view between the testator and the subscribing witnesses that he could, if so dis-

posed, see the act of attestation, whether in the same room or in an adjoining room.'' Tested by these rules, it is plain that the theft of appellant's goods was not in the presence of the custodian of them. There was a brick wall or a closed door between the custodian and the goods at the time they were stolen, and as before stated, the custodian was not aware of the theft until after the door was opened, and then the thief was 125 feet away and beyond the power of the custodian to stop him. No doubt the clause requiring the custodian to be present, was placed in the policy of insurance for the benefit of the company, so that if the custodian were actually present at the time of the theft, he could prevent it, or give an alarm so that the robbery could be prevented.

It is our conclusion that the words of the policy are not ambiguous and under the terms of the same there was no custodian present at the time the goods were stolen, and the company is not liable therefor, under the contract of insurance.

The judgment of the trial court will be affirmed.

*Affirmed.*