**ASHCRAFT et al. v. UNITED STATES FIDELITY & GUARANTY CO.**

Court of Appeals of Kentucky.

Feb. 20, 1953.

John H. Dougherty, Louisville, for appellant.

E. R. Gentry, Crawford, Jull & Gentry, Louisville, for appellee.

STEWART, Justice.

This appeal is from a judgment on a directed verdict of the Jefferson Circuit Court dismissing a claim of appellant, Elliott Ashcraft, doing business under the name of "Old Limerick Market," against appellee, United States Fidelity & Guaranty Company, hereinafter referred to as "U. S. F. & G."

Ashcraft sued on a policy contract with U. S. F. & G. to recover an alleged robbery loss of $807 which occurred to him in the following manner according to his testimony: On December 23, 1950, he sent one of his employees to the bank from his store at Seventh and St. Catherine Streets in Louisville to cash checks in the sum of $807, the money to be used in operating his business that day. The employee returned from the bank at about 9:00 a. m. and handed the money, a roll of bills, to Ashcraft who, placing it in a pocket of his smock, continued serving a customer he was then waiting on.

Shortly thereafter, Ashcraft's cashier called to him and told him his dog was in a fight out front. He went out on the sidewalk and there he saw three colored men watching the fight. One of these men owned one of the dogs involved in the fight but, until Ashcraft arrived, none of the three apparently had done anything to stop it. When Ashcraft began to kick the two dogs apart the colored men joined with him in the effort. Ashcraft testified that while they were thus engaged two of the colored men jostled him around.

Upon going back into the store, Ashcraft discovered the money was missing. He made a search, questioned his employees, but he failed to locate it. The police were then notified and arrived promptly. Ashcraft could not identify the two colored men who had jostled him, both of whom had disappeared by this time. However, the police, following the instructions of one Nichols, an employee of Ashcraft, went to the residence of the two suspects and placed them in custody. Both men were brought back to the store and interrogated about the lost cash. They were released after the officers found no definite proof to justify an arrest. The money was never recovered.

Ashcraft contends the foregoing facts definitely made out a case of robbery, because he claims, while he was being jostled around, he was cognizant of an overt felonious act being committed in his presence. U. S. F. & G. denies the evidence supports this assertion and maintains Ashcraft sustained no loss by "robbery" but that the loss of the money was solely by "theft" and that theft is not within the coverage of the policy.

The provisions of the policy applicable to the issue raised read as follows:

" 'Robbery' means the felonious and forcible taking of insured property: (1) by violence inflicted upon a messenger or custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he was actually cognizant. * * *"

Both the insurer and the insured must abide by the definition of robbery as set forth in the policy. And it will be seen that this definition covers three events, but Ashcraft seeks to fit his case in under only the third event. We must therefore examine the evidence and determine whether an overt felonious act was committed in his presence and under circumstances of which he was cognizant, which the policy requires under the third clause in order to entitle insured to recover.

It is apparent in reading the testimony of Ashcraft that he was not aware or, as the policy states it, "actually cognizant", of any act involving the abstraction of the $807 from his person by the two Negroes, if indeed they did abstract the money. On September 18, 1951, Ashcraft's deposition

was taken as if under cross-examination in the office of counsel for U. S. F. & G. He was at that time asked this question: "But, you missed the money after you went back in the store and started to put it away?" and he answered: "That is right." On cross-examination during the trial he made this statement: "If I had felt them (the colored men) take it (the money) and knew the one that got it I certainly wouldn't have let him take it without some sort of a fight." At the close of the questioning of Ashcraft by both counsel, the court, of its own motion, interrogated him thus: "Did any force come in contact with your body, or any part of your body?" Ashcraft replied: "Yes, of course, I didn't realize it at the time, but that was when I was robbed * * *."

The word "felonious" is too well known to need a definition. The dictionary defines "overt" as "open to view" or "admitting to direct evidence." The facts here indicate beyond dispute there was no "overt act," namely, no act committed that was "open to view." But even admitting there was such an act the loss would still not be covered by the policy because there is a limitation in the third clause requiring that the insured must have been "actually cognizant of," that is, must have "had knowledge of" the occurrence of the act. Ashcraft did not then know, nor can he now positively state, that the colored men perpetrated "an overt felonious act" in his presence by removing the money from his pocket. We therefore conclude he failed completely to establish any of the prerequisites to a recovery made mandatory by the policy provision he relies upon.

As far as we have been able to find, the question involved in this case has not been passed upon by this Court. However, there are cases in other jurisdictions that have definitely settled the issue in controversy. Sklar v. Globe Indemnity Co., 129 Cal.App. 439, 18 P.2d 981, 982, is a case involving an insurance contract containing a clause such as the one before us. There, a storekeeper rushed from his place of business into an adjoining storeroom to extinguish a fire. He was absent from his store from three to five minutes. He returned to find that

$1,985.04 had been taken from the cash register. In a suit on his policy contract to recover this amount upon the purported ground that he had been robbed, the court upheld a directed verdict for the insurer, saying:

"If the fire was ignited by an overt felonious act—and we are not enlightened on this subject—it was not committed in the presence of appellant, nor was he cognizant of such an act then or at any time. Perhaps the cash was abstracted from the register by means of an overt felonious act, but, if so, the act was not committed in the presence of appellant, nor was he ever cognizant of it, except through process of imagination."

Ashcraft cites the case of Duluth Street R. Co. v. Fidelity & Deposit Co., 136 Minn. 299, 161 N.W. 595, L.R.A.1917D, 684, as controlling in this case. Suffice it to say that the policy of insurance involved there did not contain a clause such as we find in the policy sued on here.

The lower court, in view of Ashcraft's testimony, correctly instructed the jury to find for U. S. F. & G.

Wherefore, the judgment is affirmed.