Felix I. Sinda, Appellee, v. The Home Indemnity Company, Appellant.

Gen. No. 46,350.

First District, Second Division.
February 15, 1955.
Released for publication March 7, 1955.

Dent, Hampton & Doten, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago, for appellee; Oswell G. Treadway, of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an action by plaintiff, Felix I. Sinda, upon a mercantile robbery and safe burglary policy issued by defendant, The Home Indemnity Company, to recover

for the loss of money alleged to have been sustained through robbery as defined in the policy. The court found the issues in favor of plaintiff and entered judgment for $1,187.80 and costs, from which this appeal is taken.

Defendant contends that the evidence fails to prove a loss occasioned by robbery as defined in the policy and that the trial court should have found the issues for and entered judgment in favor of defendant.

Plaintiff owned and operated a self-service store in Chicago, Illinois, where he sold groceries, produce, meat and packaged liquors. Plaintiff, his wife and five employees worked in the store. On April 11, 1952, at about 10:00 or 10:30 a. m. plaintiff went to the bank and withdrew $2,040 in currency and silver and returned directly to the store. He placed the money in a metal strongbox in the presence of his wife and two customers who were waiting to cash checks and turned the money over to his wife in a small office which was on a raised platform in the northwest corner of the store. It was enclosed by partitions on the south and east sides with panels 2½ to 3 feet from the floor with the upper partition of glass. The north and west walls were solid. It contained a small desk. After giving the money to his wife he went to the back room of the store, took off his jacket and returned to the office. He looked in the box and found two checks which his wife had cashed. He then took the box to the liquor department, which was in the southwest corner of the store. He placed it on top of the counter and cashed two checks for customers, after which he put the box below and behind the counter and covered it with a cardboard container. He talked with one of the customers until the telephone rang in his office and then went to answer it. While so doing he heard a rattle resembling the rattle of the money in his strongbox. However, he did nothing about the rattle he heard but proceeded to the office.

As to the events that took place immediately after this there is a conflict. On direct examination plaintiff testified that he did not observe what his wife was doing while he walked to answer the telephone; that when he heard the rattle he thought she was cashing a check. While he was in the office talking on the telephone the liquor counter was in full view and he did not observe anyone there. On cross-examination he said he did not recall whether he was looking at the liquor counter while he had the telephone conversation and that he did not at that time suspect that the moneybox had been stolen. In April of 1952 he signed a statement which stated that during the time he walked to the office to answer the telephone his back was turned to the liquor counter. It did not occur to him to look to see what caused the rattle because his wife always cashed checks and unconsciously he thought she was behind the counter. He did not look to the liquor counter at all while he was talking on the telephone.

Immediately following the telephone conversation two women came to plaintiff in the office to have checks cashed. He went with them to the liquor counter to get the strongbox. He found the cardboard container but the box with the money was gone. He assumed his wife had taken it to cash checks and on asking her where the box was he was informed by her that she had been busy and had not cashed any checks. For about two hours he searched for the box. He didn't suspect it was stolen but thought it had been placed elsewhere. He searched all over the store, checked the clothing of his employees and finally concluded that the money was stolen. He called the police, reported it to them and also reported it to his insurance agent.

At the trial plaintiff informed the court that his claimed loss arose in connection with Clause 3 of the policy definition of robbery, the relevant portion of which is as follows:

549

" 'Robbery' means the felonious and forcible taking of insured property: . . . (3) by any other overt felonious act committed in his presence and of which he was actually cognizant, provided such other act is not committed by an officer or employee of the Assured; . . ."

On this appeal plaintiff for the first time contends that under Insuring Agreement II, which reads,

"ROBBERY INSIDE PREMISES. To indemnify the assured (if insurance is provided under Sections (c) or (d) of Item 7 of the Declarations but not otherwise) for all loss of or damage (hereinafter called loss) to such property while in the Premises, and for damage to the Premises if the assured is the owner thereof or is liable for such damage, provided such loss is occasioned by:

"(a) Robbery. Robbery or attempt thereat from a Custodian while within the premises;

"(b) Kidnapping. The stealing of such property from within the premises by means of compelling a custodian or messenger by violence or threat of violence while outside the premises to admit a person thereinto or to furnish him with means of ingress into the premises, provided such loss shall occur before the premises are next opened for business;

"(c) Show Window. The stealing of such property from within a show window in the premises while regularly open for business, by a person who has broken the glass thereof from outside the premises, or by an accomplice of such person; . . ."

a broader definition should be given to the term "robbery" and that he is not confined to the definition of robbery as defined in Clause 3. The definition of robbery that plaintiff contends is implied from Insuring Agreement II, is difficult for us to understand. He apparently has patterned it to fit the facts of his case

and states it as follows: "We would therefore respectfully submit that, from an examination of the terms and provisions of the policy in question, and the facts as shown by the evidence, the plaintiff sought protection against 'robbery' as that term is generally understood, from the inside of his premises, and the defendant undertook to afford that protection on the condition that he exercise due care in guarding against such loss, by having a custodian in charge when the premises were open for business, by keeping them locked when not so open, and by not exposing the insured property openly to the public."

It is a well-established rule of law that parties to an insurance contract are free to contract as they see fit and in the absence of ambiguity the courts will enforce their contract, unless it clearly violates the law or is opposed to public policy. Hancock v. National Council of Knights and Ladies of Security, 303 Ill. 66, 73; and cf. Lesher v. United States Fidelity & Guaranty Co., 239 Ill. 502, 509; Zitnik v. Burik, 395 Ill. 182, 186.

We have examined the insurance policy, particularly the provisions hereinbefore set forth, and find no basis in it for the broad interpretation for which plaintiff contends. Under Clause A of Insuring Agreement II, not plaintiff's broad interpretation but the statutory or common-law definition of robbery would apply. The case, however, was tried on the definition of robbery as set forth in Clause 3. Plaintiff elected to proceed on this basis and cannot now attempt to assert another definition of robbery. Blanchard v. Lewis, 414 Ill. 515. Hedlund v. Miner, 395 Ill. 217; Chicago Title & Trust Co. v. DeLasaux, 336 Ill. 522; Winnard v. Clinton, 233 Ill. 320.

The elements of the defined crime stated in Clause 3 are: (1) the occurrence of an overt felonious act, other than one involving violence or fear of violence; (2) such act must have been committed in the presence of

the assured; and (3) he must have been actually cognizant of such act. The only basis upon which plaintiff can contend that the money was stolen as a result of a robbery was that he heard a rattle. He neither saw nor was aware of any act that caused the rattle. He did not know nor suspect the strongbox that held the money was being moved. There is nothing in the record to show that he was aware of any overt act being committed at the liquor counter while he was in the office talking on the telephone. There is nothing in the record to indicate that the disappearance of the cash and strongbox was caused by a felonious act. When he heard the rattle he thought his wife had moved the box. Then he thought he might have taken it to the office when he went to answer the telephone. Later he thought it might have been placed in another part of the store. He searched for approximately two hours to locate it before calling the police.

The case of Cole v. Hartford Accident & Indemnity Co., 242 Iowa 416, 46 N.W.2d 811, is very similar to the instant case. Cole sued the defendant under a policy it had issued which contained the same definition of robbery. The evidence showed that Cole and his clerk were alone in the plaintiff's jewelry store when two men and a woman came in. The clerk showed the woman some dresser sets and when Cole approached the two men they told him that they were waiting for the woman. The three left without buying anything. Three hours later when a customer came in to look at diamond rings Cole went to the safe where his clerk had placed them earlier in the morning and for the first time discovered certain rings were missing. After inquiries were made Cole concluded that the two men who were with the woman had taken the missing rings. The defendant contended that its policy did not afford coverage for the loss claimed by Cole because he was not actually cognizant of an overt felonious act causing

552

the loss. The trial court entered a judgment for defendant. Cole appealed. The court said (46 N.W.2d 815):

"Before Count I could properly be submitted to the jury there must have been substantial evidence the rings were taken by 'overt felonious act committed' in the presence of plaintiff or Miss Gearhart of which he or she 'was actually cognizant.' We find no evidence the rings were taken by overt felonious act of which either plaintiff or Miss Gearhart was actually cognizant. In fact it appears neither plaintiff nor Miss Gearhart was actually cognizant of any overt felonious act by which the rings were taken."

In the case of Sklar v. Globe Indemnity Co., 129 Cal. App. 439, 18 P.2d 981, plaintiff sued for a robbery under a policy containing the same definition. The evidence showed plaintiff kept a store with a cash register and that he also operated a pool and billiard room which adjoined the store and was connected to it by an archway. Plaintiff cashed a check for a person in the store and then went with him into the poolroom. He then was called to attend a customer in the store and after the customer left, plaintiff went into the poolroom and stood behind the counter. Almost immediately the customer he had just waited upon returned and informed plaintiff that the building was on fire. Plaintiff and occupants of the store ran out of the poolroom front door into the street and thence to a small adjoining building kept by him as a storeroom, where plaintiff found some paper and oiled sacks burning. Plaintiff stayed there about three to five minutes and then returned to the store and immediately discovered his cash register open and $1,985.04 missing therefrom. The court held that under the facts there was nothing which showed an overt felonious act committed in the presence of the custodians and of which they were actually cognizant at the time. If the fire was ignited

by an overt felonious act it was not committed in the presence of the plaintiff nor was he cognizant of such an act at any time. If the cash was abstracted from the register by means of an overt or felonious act it was not committed in the presence of the plaintiff nor was he cognizant of it except through the process of imagination.

Plaintiff's cognizance in the instant case of any overt or felonious act could only have been through the process of imagination for he only heard a rattle.

██ Considering the testimony in the aspect most favorable to the plaintiff, the conclusion is inescapable that he failed to prove that his loss was occasioned through a felonious act which was overt and of which he was actually cognizant.

Plaintiff cites several cases, including Grimes v. Maryland Casualty Co., 300 Ill. App. 62. An examination of these cases shows that none is in point on the issues involved in this case. The court in each instance makes it clear that it did apply the policy definition of robbery to the proven facts in order to determine whether the insured was entitled to recover.

The trial court erred in not allowing defendant's motions for finding in its favor and in not entering judgment for the defendant. The judgment for plaintiff is set aside and reversed and judgment entered here for defendant.

Judgment for plaintiff set aside and reversed. Judgment entered here for defendant.

McCORMICK, P. J. and SCHWARTZ, J., concur.