STATE FARM FIRE & CASUALTY CO. *v.* ROBERT ACKERMAN.

[No. 871 A 153.  Filed March 27, 1972.  Rehearing denied
April 27, 1972.  Transfer denied September 15, 1972.]

*Michael E. Connelly, Given, Dawson & Cappas,* of East Chicago, for appellant.

*Richard P. Komyatte, Daniel L. Freeland, Efron, Efron & Komyatte,* of Hammond, for appellee.

HOFFMAN, C.J.—The sole issue presented by this appeal is whether the taking of money from a service station cash drawer was a robbery as defined in an insurance policy issued

by defendant-appellant, State Farm Fire & Casualty Company, (State Farm) to plaintiff-appellee, Robert Ackerman, d/b/a Ackerman's Super Shell Service (Ackerman). The questioned provision of the insurance policy defines robbery in the following manner:

" 'Robbery' means the taking of insured property * * * (3) by any other overt felonious act committed in his presence and of which he was actually cognizant * * *."

The facts to which this definition is sought to be applied may be summarized as follows from the "Stipulation of Facts as Evidence" entered into by the parties and filed with the trial court:

On January 27, 1970, the insured, Robert Ackerman, and three employees were on duty at the insured's service station. Ackerman and another employee were working in the bay or garage area of the station. A third employee was servicing a car near the pumps, and the other employee was in the showroom of the station.

A 1964 Cadillac bearing Illinois license plates drove into the station area. A man and woman entered the showroom and asked for change for the candy machine. The employee gave them two dollars worth of dimes from the counter drawer which was the cash drawer for the station, locked the drawer and then went into the bay or garage area himself.

In the meantime, the third employee had finished gassing the automobile and went into the bay or garage area.

While all four attendants were working in the bay area, the man stood in the doorway between the bay area and the showroom looking into the garage area. He continued to so stand for a period of time and was clearly visible to the four attendants.

During this period of time the woman kept operating the candy machine. There was a popping of the machine two or three times, followed by a silence of a few seconds, and then another popping of the machine two or three times.

After a period of minutes the man and woman returned to the car and drove off.

Within a couple of minutes another car drove up for gas. One of the employees walked from the bay or garage area through the showroom and out to the pump area. No one was in the showroom, but he didn't look toward the area of the cash drawer as he walked through the showroom. He gassed the car and then went into the showroom to make change. He then saw the cash drawer standing open. There were pry marks on the drawer and the tongue of the drawer was still in a closed or locked position, since the drawer had been pried open. He then called Robert Ackerman who came into the showroom and observed the pried open drawer where only a few pieces of change remained. The sum of $388.57 had been taken.

The policy contained a $50 deductible clause, thereby leaving allegedly recoverable losses in the amount of $338.57.

Trial by jury was waived, and the trial court having heard the arguments of counsel and having considered the evidence as stipulated and agreed by the parties, entered judgment for plaintiff-Ackerman in the amount of $388.57.

Defendant-State Farm then filed its motion to correct errors containing the following specifications:

"1. The amount of the recovery awarded by the court is excessive, in that the parties had stipulated that damages to the plaintiff covered by the policy in effect could only be the sum of $338.57 (Page 3, Paragraph 2 of stipulation) and the court entered judgment in the amount of $388.57.

"2. The decision is not supported by sufficient evidence and is contrary to evidence * * *.

"3. The decision is contrary to law in that the court is expanding both the common law and the policy definition of 'Robbery' to make the word an all embracing definition such as larceny, rather than the definition which makes violence, fear of violence or awareness of the theft a condition of 'Robbery'."

Following a hearing on defendant-State Farm's motion to correct errors, the trial court reassessed the damages and entered its amended judgment for plaintiff-Ackerman in the amount of $338.57 under rhetorical paragraph 1 of said motion and overruled said motion as to rhetorical paragraphs 2 and 3.

Both appellant and appellee have cited case law from other jurisdictions interpreting insurance provisions similar to the one here in question. Under similar contractual language and somewhat similar factual conditions, there seems to be a division of authority among the courts as to whether or not coverage should be allowed.

In interpreting the provision of the policy in question, this court cannot rewrite or extend the coverage intended by the clear and unambiguous language of the insurance contract. *Ely* v. *State Farm Mutual Automobile Insurance Co.* (1971), 148 Ind. App. 586, 268 N. E. 2d 316, 320, 25 Ind. Dec. 289 (transfer denied). Where there is no ambiguity the terms of the policy must be given their plain, usual and ordinary meaning. *O'Meara* v. *American States Insurance Company* (1971), 148 Ind. App. 563, 268 N. E .2d 109, 111, 25 Ind. Dec. 261, (transfer denied). Where, however, the language of an insurance policy is so ambiguous as to be susceptible of more than one interpretation, the court will adopt the construction most favorable to the insured. *Patton* v. *Safeco Insurance Company of America* (1971), 148 Ind. App. 548, 267 N. E. 2d 859, 25 Ind. Dec. 191.

In the instant case, the provision of the policy in which the clause in question is found, reads as follows:

" 'Robbery' means the taking of insured property (1) by violence inflicted upon a messenger or a custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he was actually cognizant, provided such other act is not committed by an officer, partner or employee of the Insured; * * *."

The criminal definition of robbery is inapplicable in interpreting the above provision. This insurance policy was intended to encompass a wider range of activity than the taking "from the person of another any article of value by violence or by putting in fear." See: IC 1971, 35-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956). We, therefore, must determine whether Ackerman has been robbed solely under the terms of the insurance policy.

In *O'Meara* v. *American States Insurance Company, supra,* at 563 of 148 Ind. App., at 111 of 268 N. E. 2d, it is stated:

"[I]n order to constitute ambiguity so as to be susceptible to more than one interpretation, it must be shown that reasonably intelligent men on reading the insurance contract would honestly differ as to its meaning."

Under this definition of "ambiguity" the provision of the policy defining "robbery" would qualify as ambiguous. Appellant-State Farm has suggested one interpretation of clause (3) of the policy, that is, for Ackerman's loss to be covered four elements must be shown: 1) an overt 2) felonious act 3) committed in the presence of the insured, and 4) of which the insured was actually cognizant.

We believe that this literal interpretation suggested by appellant is quite reasonable, however, when clause (3) is literally read in conjunction with clauses (2) and (1), the ambiguity to which we referred is shown. It is difficult to foresee any occasion when coverage under clause (3) would be appropriate because most, if not all, circumstances would be covered by clauses (1) and (2). For instance, if an insured stands by and watches a felon remove money from his cash drawer it could well be argued that the taking was committed by putting him in fear of violence as covered by clause (2). Therefore, the interpretation offered by appellant would render the clause (3) without purpose and inactive. An ambiguity is thereby created in that if clause (3) was not intended to protect the insured in circumstances such as those

presented here, when could the insured avail himself of coverage under such clause?

If the above ambiguity were disregarded the words "overt," "presence" and "actually cognizant" as used in the policy are susceptible to such varied meanings that an ambiguity is created thereby even when the literal reading of clause (3), as suggested by appellant, is applied.

Appellant concedes that the prying open of the cash drawer and the taking of the money was a felonious act.

Appellant contends, however, that the act was not "overt" because it was not seen by Ackerman. Such strained interpretation of the word "overt" would be too restrictive and is untenable.

The word "overt" has been judicially defined as "an outward act done in pursuance of the crime." Also, an "overt" act has been defined as one which is "manifest, open, or apparent." See: 30 Words and Phrases, at 218, 1971 P.P., and cases there cited.

In the instant case, the taking of the money was "an outward act done in pursuance of the crime." Such act was "manifest, open, or apparent" to anyone who might have been in the room. In its usual and ordinary meaning an act need not be observed by the victim to be overt. It is sufficient for coverage under clause (3) of the insurance policy that there was a posting of a lookout in the doorway, a manipulation of the candy machine to mask other noises, a prying of the cash drawer and the actual taking of the contents thereof. All of these acts were sufficiently manifest or open to be qualified as "overt."

Appellant also creates an ambiguity concerning the word "presence" as contained in clause (3) of such policy. Appellant-State Farm's interpretation is that for coverage under the insurance policy, Ackerman would have to have been physically present in the showroom. On the other hand,

another reasonable interpretation of the word "present" is that Ackerman was "present" within the service station, and was separated from view of the crime only by the partition between the two rooms. Furthermore, Ackerman was in the "immediate presence" and was aware of the man, the alleged co-felon, standing in the doorway between the bay area and the showroom. Under this interpretation the overt, felonious act was committed in the presence of Ackerman.

State Farm's interpretation of the words "actually cognizant" creates still another ambiguity. Appellant contends that Ackerman would have to have been aware of the taking of the money at the time it was taken in order to recover under the terms of the insurance policy.

Notwithstanding the persuasiveness of this contention, there appears to this court another quite reasonable interpretation of the words, "actually cognizant." The felonious act was the taking of the money from the cash drawer. However, asking for change for the candy machine, standing "lookout" in the doorway, manipulating the candy machine and prying the cash drawer were all a part and parcel of the felonious act. Each individual act was done with the intent of ultimately unlawfully obtaining the money. The removal of the money from the cash drawer and escape were only the culmination of the individual felonious acts. Ackerman was actually cognizant or aware of certain of these individual acts, that is, he was aware of having given change for the candy machine, he was aware that such machine was being operated and he was aware of the man standing in the doorway. Therefore, it might reasonably be said that Ackerman was cognizant of the felonious activities.

Because of the ambiguities created concerning these terms of the insurance policy, reasonably intelligent men would differ as to their meaning. This court is required to resolve such ambiguities in favor of the insured and, therefore, coverage under the insurance policy must be allowed.

Judgment of the trial court is affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported in 280 N. E. 2d 332.