CUMMINGS FOODS, INC., d/b/a Cummings IGA Foodliner, Plaintiff-Appellant, *v.* GREAT CENTRAL INSURANCE COMPANY, *et al.*, Defendants-Appellees.

Fourth District    No. 4—82—0335

Opinion filed August 5, 1982.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellant.

Heyl, Royster, Voelker & Allen and Alfred B. LaBarre, of Ensel, Jones, Blanchard & LaBarre, both of Springfield (David L. Requa, of counsel), for appellees.

JUSTICE TRAPP delivered the opinion of the court:

Plaintiff sued to recover damages against defendants arising out of the theft of approximately $22,000 from plaintiff's grocery store in Brighton, Illinois. It appeals the order of the trial court which dismissed all counts of plaintiff's second amended complaint for failure

to state a cause of action.

In count I of plaintiff's second amended complaint, recovery was sought against defendant, Great Central, under the terms of a comprehensive insurance agreement which provided coverage for robbery as defined in the policy. Count II, which was also directed against Great Central, sought recovery of punitive damages and attorney's fees "under the statute" for defendant's alleged wilful, wanton, and malicious denial of coverage. Count III of plaintiff's complaint sought damages against defendant, Glenn-Wohlberg & Co., for its alleged breach of a duty to place the insurance with a "reliable insurer" and, like count II, count IV sought recovery of punitive damages and attorney's fees for Glenn-Wohlberg's alleged wilful, wanton, and malicious denial of plaintiff's claim. Count V requested damages from Wetterau Foods for its breach of duty to "provide a reliable insurance agent" and count VI contained a request as in count IV for punitive damages and attorney's fees.

Disputed paragraph three, which is the only definition of robbery claimed to be applicable by plaintiff, defined robbery as:

"[T]he taking of insured property *** by any other overt felonious act committed in his [a custodian's] presence and of which he was actually cognizant, provided such other act is not committed by an officer, partner, or employee of the insured."

In count I it is alleged that on May 12, 1980, Jim Cummings had the sum of $22,000 ready to be deposited in the bank when six women entered the store whom he suspected would be shoplifters. It was alleged that Cummings left the money in the store office with the door open, and proceeded to the counter to sack groceries to prevent suspected shoplifting. One of the women led Cummings down the store aisles engaging him in conversation, while yet another went to the checkout counter. It is alleged that Cummings became suspicious of the women's actions and turned toward the door to see the balance of the women run out to three automobiles parked near the front of the store. The complaint further alleged that Cummings observed that the women *had taken* the money, and immediately called the Brighton police department informing the dispatcher that a robbery had occurred. A police report incorporated by reference in the complaint indicates that the women had occupied the employees in the store with questions over store products, but that no witness saw the women in or near the office, or with the money. No allegation is made by plaintiff that these suspects were convicted of the alleged offense, or found with the money.

The first issue we address on appeal is plaintiff's contention that

defendant Great Central's failure to challenge coverage under the robbery clause of the agreement in its motion to dismiss requires that we treat such defense as waived.

The complaint makes no specific allegation which stated what portion of the insurance agreement afforded coverage for the claimed loss. Defendant's motion not only alleged generally that the count failed to state a cause of action, but also suggested that plaintiff had failed to set forth the policy provision at issue. In defendant's legal memorandum, which accompanied the motion, defendant mentioned several possible bases under the policy which plaintiff conceivably could have claimed coverage under, including the robbery provision.

■ While we agree with plaintiff's suggestion that issues and grounds not raised in a motion to dismiss are not preserved for review (*Berry v. G.D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550), we conclude that plaintiff was apprised of defendant's challenge in the memorandum and by the general reference in the motion that plaintiff had not alleged that coverage was provided for in any provision, implicitly including the robbery clause. We find sufficient specification in defendant's motion to comply with section 2—615's requirement that the motion specify the defects complained of (Ill. Rev. Stat. 1981, ch. 110, par. 2—615(a)), and reject plaintiff's argument that defendant has waived any challenge to plaintiff's claim of coverage under the robbery portion of the insurance agreement.

Plaintiff next argues that the facts as pleaded in count I established that an overt felony took place while the custodian, Jim Cummings, was present and actually cognizant thereof within the meaning of the policy language. Plaintiff additionally suggests that the insurance clause is ambiguous, and because of this the policy should be construed against the maker, Great Central.

The standard for ruling on a motion to dismiss is well established. On appeal from a ruling on a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615), all well-pleaded facts and reasonable inferences therefrom stand admitted and the complaint should be dismissed only if no set of facts, as pleaded by plaintiff, could state a cause of action. (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849.) For reasons given below, we believe the trial court properly dismissed counts I through VI of plaintiff's second amended complaint.

The policy language at issue has been interpreted by Illinois courts. *Grimes v. Maryland Casualty Co.* (1939), 300 Ill. App. 62, 20 N.E.2d 982; *Sinda v. Home Indemnity Co.* (1955), 4 Ill. App. 2d 546,

124 N.E.2d 557.

In *Grimes*, suit was brought against an insurer under a policy of robbery insurance which defined robbery in the same language as that at bar, with the exception that the custodian there was required to be " 'actually cognizant at the time of the felony.' " (300 Ill. App. 62, 64.) In *Grimes*, the insured's employee had been directed to a railroad freight terminal to pick up a shipment of candy and tobacco. The employee parked the delivery truck, walked into the freight terminal, and raised the freight terminal door when he observed the delivery truck being driven away from the loading area.

The trial court directed a verdict for the defendant and on appeal, the case was decided on the question of whether the custodian was present when the overt felony occurred. Finding the contract unambiguous, the court applied holdings from cases which considered whether a will was attested in the testator's presence to the requirement of the custodian's presence. The court construed the word "presence" to require unobstructed physical presence at the place of the overt felony and sustained a directed verdict for the defendant since there was a brick wall, or closed door, between the custodian and the goods at the time the overt felony was commenced. (300 Ill. App. 62, 65-66, 20 N.E.2d 982, 983-84.) The court reasoned that the purpose of such requirement was undoubtedly so that the custodian, if present, could attempt to prevent the robbery or sound an early alarm so that it could be prevented.

The only other Illinois case we have discovered involving a similar policy provision is *Sinda*, though it considered the question of whether the custodian was actually cognizant of the overt felony.

Other cases called to our attention by the parties dealing with a similar policy provision have also considered the interpretation of the word "presence." (See *State Farm Fire & Casualty Co. v. Ackerman* (1972), 151 Ind. App. 464, 280 N.E.2d 332; *Buffalo Smoketeria, Inc. v. Metropolitan Casualty Insurance Co.* (1932), 143 Misc. 894, 258 N.Y.S. 581. The latter court is not a court of review.

In *Ackerman*, the insured and three employees were in a service station garage when two persons entered the station showroom seeking change for vending machines. One employee went to assist the two, and returned to the garage area. One of the persons then began operating a candy machine while the other apparently pried open the cash register and took some money. Within a few minutes an employee returned to the showroom and discovered the cash missing from the register, and the two gone. The appellate court concluded that the policy language defining robbery was ambiguous and sus-

tained a construction in favor of the insured. In view of the court's conclusion that the policy was ambiguous, the court believed that "[a]nother reasonable interpretation of the word 'present' is that Ackerman was 'present' within the service station, and was separated from view of the crime only by the partition between the two rooms." 151 Ind. App. 464, 470, 280 N.E.2d 332, 336.

We do not agree with the plaintiff's contention that the policy at issue was ambiguous. We believe that the decision in *Grimes* is a correct interpretation of the word "presence," and that the decision in *Ackerman* and *Buffalo Smoketeria* construed the word beyond its generally accepted meaning. Following *Grimes*, and applying its holding to the alleged felony theft of the money herein, we find that plaintiff failed to satisfy this condition absent any allegation that plaintiff's custodian had an unobstructed view of the felony.

Even assuming that plaintiff satisfied the requirement of the custodian's presence, we believe the second requirement in the policy, *i.e.*, that the custodian be actually cognizant of the overt felony, was also not met.

In *Sinda*, an action was brought to recover for a loss allegedly covered by a policy insuring against robbery with the same definition as that at bar. There the insured operated a self-service grocery store, and as a service to its customers cashed checks for them. The insured had placed a strong box containing approximately $2,000 under a counter in the liquor department and had left to answer a phone call. On his way to answer the phone, he heard a rattle resembling the rattle of money in the strong box, but did nothing about it. When he returned he could not find the money and inquired of his employees, and searched for two hours before concluding it was stolen. The insured contended that he was covered under the robbery provision, and the trial court agreed and entered judgment in his favor. On appeal, the court concluded that he was not actually cognizant of anything, and reversed the judgment of the trial court. The court held that the record failed to show that he was aware of any overt act committed at the liquor counter while he was in the office talking on the phone. 4 Ill. App. 2d 546, 554, 124 N.E.2d 557, 559.

In *Ashcraft v. United States Fidelity & Guaranty Co.* (Ky. App. 1953), 255 S.W.2d 485, the insured's employee had returned from the bank and given the insured approximately $800 in cash, which was placed in the pocket of a smock being worn by the insured. Shortly thereafter, the insured was informed that his dog was in a fight in front of the store and he proceeded to investigate. He went outside and saw three men watching the fight, one of whom owned another

dog which was also involved. The insured kicked the dogs to separate them, and the other men jarred him about during the process. When he returned inside, the money was missing from the pocket of his smock. Subsequent questioning of the employees and a search proved fruitless, so a claim was made under an insurance agreement containing an identical robbery provision as that at bar. The appellate court sustained a directed verdict for the defendant and concluded that the insured "did not then know, nor can he now positively state, that the colored men perpetrated 'an overt felonious act' in his presence by removing the money from his pocket." 255 S.W.2d 485, 487.

The facts of plaintiff's complaint are of like import. Plaintiff did not allege that he saw the women near the office, that he saw them or anyone with the money, that the women were ever found with the money, or that they were ever tried or convicted for the alleged offense. The facts may bring a conclusion that these women took the money, but our function is simply to interpret the policy, not rewrite it. The act alleged as the felony was the taking of the money, and no facts demonstrate the custodian's "actual cognizance" of this act of taking as defined in the policy. We believe the trial court correctly dismissed count I of plaintiff's complaint.

As to the allegations of count III, plaintiff alleged that defendant, Glenn-Wohlberg & Co., was the authorized agent of Great Central and solicited plaintiff for the purpose of placing insurance with the carrier. Plaintiff alleged that defendant "owed a duty to plaintiff, *** to place the insurance with a reliable insurer; and further owed a duty to the purchaser of the insurance to service the policy after such had been issued." Plaintiff set forth the facts of the theft and alleged that as a breach of this duty, Glenn-Wohlberg had maliciously and wilfully denied plaintiff's claim. In support of its contention that count III states a cause of action, plaintiff cites *Talbot v. Country Life Insurance Co.* (1973), 8 Ill. App. 3d 1062, 291 N.E.2d 830, and *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75.

In *Talbot*, a complaint against an insurance agent was held to state a cause of action in tort where it alleged that the agent had failed to act with promptness in accepting or notifying the applicant of the rejection of an application for life insurance submitted to the insurer on September 13, 1969, and rejected two days after the proposed insured's death on February 21, 1970.

At bar, there is no complaint that defendant Glenn-Wohlberg did not act promptly to secure coverage. The complaint simply states a

conclusion that the coverage was not placed with a reliable insurer. A similar issue was presented in *Omni Overseas Freighting Co. v. Cardell Insurance Agency* (1979), 78 Ill. App. 3d 639, 397 N.E.2d 112. In *Omni*, the plaintiff, an international cargo company, hired the defendant to procure insurance coverage for possible damage to goods while in plaintiff's possession. The insurance broker procured coverage from Transamerica Insurance Group, but this policy was later cancelled. The insurance broker failed to notify the plaintiff of the cancellation, and as a result a subsequent loss was not covered. The court held that the failure of the insurance broker to procure the type of insurance requested by plaintiff was a breach of the brokerage agreement he had entered into with the plaintiff.

Ordinarily, although the cases do not draw a clear distinction, the suit is one for breach of the agent's agreement to procure a specific type of insurance coverage. (See *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.* (1963), 46 Ill. App. 2d 131, 195 N.E.2d 32.) Cases have imposed liability on an agent for a failure to act to insure that a policy contains no material defects in coverage. In *National Boulevard Bank v. Brokerage Resources, Inc.* (1976), 42 Ill. App. 3d 940, 356 N.E.2d 988, it was held that an insurance broker could be held liable in negligence for failing to procure a vacancy endorsement on a fire insurance policy when such endorsement was material for coverage, and the broker had testified that this endorsement coverage was generally an issue a broker would investigate when setting up a fire policy.

Plaintiff's count III does not allege that Glenn-Wohlberg was requested to obtain larceny coverage, and no allegation is made that its failure to do so would have foreseeably resulted in damage to plaintiff. Plaintiff's allegation that defendant had the duty to provide a "reliable insurer" is not only conclusory, but fails to allege any undertaking or act of negligence on the part of Glenn-Wohlberg. We conclude that plaintiff's count III fails to state a recognized cause of action. Moreover, count III alleged that Glenn-Wohlberg was acting as Great Central's insurance agent, and it is not alleged that Glenn-Wohlberg was acting as plaintiff's insurance agent in the matter. This presents an additional reason to hold count III insufficient to create a duty on the insurance agent to act on plaintiff's behalf. See *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.* (1963), 46 Ill. App. 2d 131, 140-41, 195 N.E.2d 32, 37.

Plaintiff's additional allegation that agent Glenn-Wohlberg & Co. had a duty to service the insurance policy after it was issued also presents no recognizable cause of action. He correctly cites *Le-*

*dingham* as authority for the rule that an insurer has a duty to act in good faith and deal fairly with the other party to the transaction. Plaintiff then cited *Landau v. Landau* (1951), 409 Ill. 556, 101 N.E.2d 103, as authority for the proposition that an agent may be held liable for taking an affirmative role in violating a duty a disclosed principal owes to a third person. While *Landau* so held, plaintiff made no allegation to show in what respect Glenn-Wohlberg dealt unfairly with the insured in servicing the policy, and no allegations to demonstrate that the agent took an affirmative role in breaching the duty of Great Central to deal in good faith and fairly with Cummings Foods. The only allegation is that the agent relayed the denial of the claim from Great Central to the insured. There are no allegations to demonstrate how this was a breach of the principal's duty of good faith and fair dealing. In view of the previous discussion, it is clear that the insurer was acting fairly with the insured in asserting a policy defense within the language of the agreement. The agent who denied the claim on the same basis could not be said to have acted in bad faith and unfairly.

Count V of plaintiff's complaint sought actual damages of $10,000 against Wetterau Foods for its alleged breach of a duty to provide a "reliable insurance agent." Plaintiff averred that Wetterau Foods, Inc., in consideration of plaintiff's purchase of merchandise, provided various services pertaining to the operation of Cummings IGA, one of which was the securing of an insurance agent. Plaintiff claims "that one of the services provided by the defendant, Wetterau Foods, Inc., a Missouri corporation, in providing, securing, and placement of insurance owed a duty to the plaintiff *** to provide a reliable insurance agent." Plaintiff alleged that Wetterau, through its agent, wilfully, wantonly, and maliciously refused to assist it in obtaining recovery and wilfully, wantonly , and maliciously denied its claim. Plaintiff alleged that as a result of the denial of the claim it was damaged in the sum of $10,000.

Neither party has cited any authority affirming or defeating plaintiff's claim in count V. Plaintiff has pleaded no facts to show the existence of such a duty arising under a contract between the parties, and we believe that the allegations fail to demonstrate sufficient facts to create a duty arising in tort, the breach of which would render Wetterau Foods, Inc. liable to the plaintiff. It is clear that to state a cause of action based on negligence the complaint must allege facts showing a duty , a breach of that duty, and resulting damages. (*Borushek v. Kincaid* (1979), 78 Ill. App. 3d 295, 397 N.E.2d 172.) Plaintiff's complaint alleged no facts to establish a duty either in contract, or in

tort. We conclude that the trial court acted properly in dismissing this count.

Counts II, IV, and VI of the second amended complaint sought punitive damages and attorney fees against defendants for their alleged breach of duties pursuant to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 767). Count II alleged that plaintiff advised defendant's agent, Glenn-Wohlberg & Co., of the loss and the circumstances surrounding the claim; that Glenn-Wohlberg's agent denied coverage because no one saw the money taken, had been threatened, or saw the thief go into or out of the office; that the claim was justified; and, finally, that the denial of the claim by Great Central was wilful, wanton, and malicious, entitling plaintiff to $100,000 in punitive damages and attorney's fees "under the statute."

Defendant argues that no specific facts are alleged to support an award of punitive damages, and that punitive damages are not available in a breach of contract action by virtue of the decision in *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373. Alternatively, defendant Great Central argues that the allegations of the complaint do not establish that the denial of payment was vexatious and unreasonable under the above cited section of the Insurance Code.

While it is true, as defendant points out, that *Debolt* did deny a common law tort action for punitive damages arising out of wilful refusal to pay an insurance claim (but see *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540; see also *Lynch v. Mid-America Fire & Marine Insurance Co.* (1981), 94 Ill. App. 3d 21, 418 N.E.2d 421), plaintiff at bar sought recovery "under the statute," presumably section 155 of the Insurance Code of 1937 (Ill. Rev. Stat. 1981, ch. 73, par. 767).

Section 155 provides, in part:

"In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling the claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $5,000." Ill. Rev. Stat. 1981, ch. 73, par. 767.

Two reasons support the dismissal by the trial court of count II of plaintiff's complaint. First, it is clear that plaintiff's recovery under section 155 is limited to $5,000. Secondly, plaintiff has not presented sufficient facts to show that the insurance company's denial was vexatious and unreasonable. Its assertion of a legitimate policy defense, supported by case authority, cannot be considered unreasonable or vexatious. See *Jenkins v. State Security Insurance Co.* (1978), 56 Ill. App. 3d 737, 371 N.E.2d 1203.

■ Count IV alleged that Glenn-Wohlberg & Co. was the agent of defendant Great Central, and had solicited plaintiff to place insurance with Great Central. Plaintiff alleged that Glenn-Wohlberg had a duty to place the insurance with a reliable insurer, and further had a duty to service the policy after its issuance. Plaintiff claims Glenn-Wohlberg had denied the claim and alleged that the denial was wilful and malicious entitling plaintiff to obtain recovery of attorney's fees and punitive damages of $100,000 "under the statute." Count VI alleged that Wetterau Foods, in consideration of plaintiff's purchases of merchandise from it, provided plaintiff with an insurance agent to procure coverage for its grocery store. The count further alleged that defendant Wetterau had a duty to provide a reliable insurance agent and an agent who would represent plaintiff's interest in any insurance matter. It was claimed that Wetterau, through its agent, Glenn-Wohlberg, wilfully, wantonly, and maliciously denied plaintiff's claim entitling plaintiff to attorney's fees and punitive damages "under the statute."

■ We think it clear that plaintiff's claim for attorney's fees and punitive damages in counts IV and VI should be denied for the reason that the statute referred to (*i.e.*, section 155 of the Illinois Insurance Code of 1937) does not allow recovery of punitive damages and attorney's fees against noninsurers. The evident purpose of section 155 was to provide an insured with the remedy against an insurer under circumstances where the issue is the amount of loss, or the liability of the insurer on a policy of insurance. Plaintiff's claim under counts IV and VI requesting punitive damages against these noninsurers was properly dismissed.

For the reasons stated, the trial court's order dismissing counts I through VI of plaintiff's second amended complaint is affirmed.

Affirmed.

GREEN, P. J., and LONDRIGAN, J., concur.